Sutton v. State.

SUTTON v. STATE.

(*Jackson.*    June 11, 1896.)

1. LEGISLATURE.  *Determines policy of legislation.*

The Legislature determines for itself, and conclusively, without any power of review by the Courts, all questions touching the policy or impolicy of enacting laws, and their merits or demerits.  (*Post, p. 698.*)

Constitution construed: Art. II., § 2.

Cases cited and approved: Ballentine v. Pulaski, 15 Lea, 633; Lynn v. Polk, 8 Lea, 229; Peck v. State, 86 Tenn., 262; Williams v. Nashville, 89 Tenn., 488; Cole Mfg. Co. v. Falls, 90 Tenn., 481.

2. CONSTITUTIONAL LAW.  *"No fence" law unconstitutional.*

The classification of counties under the "no fence law" solely with reference to the census of 1890, without making any provision as to changes of population that might occur or be shown by any subsequent census, violates Art. I., § 8, of the Constitution, which forbids deprivation of rights of the citizen except by "the law of the land," and Art. XI., § 8, which prohibits class legislation.  (*Post, pp. 698–706.*)

Constitution construed: Art. I., § 8; Art. XI., § 8.

Act construed: Acts 1895, Ch. 182.

Cases cited and approved: Vanzant v. Waddell, 2 Yer., 260; Wally v. Kennedy, 2 Yer., 555; Bank v. Cooper, 2 Yer., 600; Jones v. Perry, 10 Yer., 71; Sheppard v. Johnson, 2 Hum., 296; Budd v. State, 3 Hum., 483; Mayor v. Dearmon, 2 Sneed, 103; Brown v. Haywood, 4 Heis., 357; State v. Burnett, 6 Heis., 186; State v. Rauscher, 1 Lea, 97; Davis v. State, 3 Lea, 379; Maney v. State, 6 Lea, 221; Hatcher v. State, 12 Lea, 371; Woodard v. Brien, 14 Lea, 523; Memphis v. Fisher, 9 Bax., 239; Burkholtz v. State, 16 Lea, 71.

3. SAME.  *Same.*

Embracing counties having a population not less than 30,000 nor more than 34,000, as well as those which have 55,000 and

Sutton v. State.

over, and also any county adjoining one of these which has a. population of 35,100 and over, in a statute prohibiting stock to run at large, while other counties may adopt the statute by a majority vote, in an election ordered by the Quarterly Court, makes an unnatural, arbitrary, and capricious classification, which renders the statute invalid. (*Post, pp. 706–710.*)

Act construed: Acts 1895, Ch. 182.

Cases cited and approved: Demoville v. Davidson County, 87 Tenn., 214; Railroads v. Crider, 91 Tenn., 490; State v. Alston, 94 Tenn., 674; Stratton Claimants v. Morris Claimants, 89 Tenn., 500.

4. SAME. *Rule as to valid class legislation.*

Legislation intended to affect a particular class, and not the public at large, must extend to and embrace equally all persons who are or may be in the like situation and circumstances, and the classification must be natural and reasonable, not arbitrary and capricious. (*Post, p. 710.*)

---

FROM SHELBY.

---

Appeal from Criminal Court of Shelby County, L. P. COOPER, J.

MALONE & MALONE and C. R. BARTEAU for Sutton.

Attorney-general PICKLE and MORGAN & McFARLAND for State.

CALDWELL, J. Joe Sutton was indicted and convicted in the Criminal Court of Shelby County for unlawfully and knowingly permitting his live stock to run at large, in violation of what is known, popularly, as the "no-fence law," the same being

Ch. 182 of the Acts of 1895. He was fined twenty-five dollars, and has appealed in error.

The indictment is in good form, and the proof is plenary; but the contention is made, on behalf of the plaintiff in error, that the statute is unconstitutional, and, consequently, that his motion to quash the indictment, and then his motion in arrest of judgment, should have been sustained.

It is well to say, preliminarily, in response to able arguments at the bar, for and against the law as a meritorious or undeserving measure, that the Courts have nothing to do with the mere policy or impolicy of any legislation; and, therefore, that it is not for us to determine whether the end designed to be accomplished by the Act mentioned is good or bad. *Ballentine* v. *Pulaski*, 15 Lea, 634; *Lynn* v. *Polk*, 8 Lea, 229; *Peck* v. *The State*, 86 Tenn., 262; *Williams* v. *Nashville*, 89 Tenn., 488; *Cole Mfg. Co.* v. *Falls*, 90 Tenn., 481. That was a question for the Legislature, and its decision thereof is not subject to judicial review. Const., Art. II., § 2; Cooley's Const. Lim., 202. The Act is as follows:

"AN ACT to encourage economy in the use of timber in the State of Tennessee, and for the protection of growing crops.

" SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That in all the counties of the State having a population of not less than 30,000, and not more than 34,000, and of

Sutton v. State.

55,000 and over, according to the Federal census of 1890, it shall be unlawful for any owner of · any horse, cow, sheep, goat, hog, or other live stock, to knowingly permit the same to run at large within the limits of such counties of this State; *Provided, however,* It shall not be unlawful to use unfenced lands of this State in such counties (the owners of such lands not objecting) for summer range, if the live stock shall be placed under the care of a herdsman.

"SEC. 2. *Be it further enacted,* That the owner of live stock mentioned in Sec. 1 of this Act shall be liable for all damage done to the property of other persons while running at large in said counties of this State.

"SEC. 3. *Be it further enacted,* That in addition to the owner's liability for damage done by the live stock mentioned in Sec. 1, the party shall have a lien on the animal or animals doing the damage, and recover the same by attachment.

"SEC. 4. *Be it further enacted,* That any person violating this Act shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than twenty-five ($25) dollars nor more than one hundred ($100) dollars.

"SEC. 5. *Be it further enacted,* That it shall be the duty of the Judges of the Circuit and Criminal Courts of this State, in such counties, to make special reference to this Act to the grand juries.

"SEC. 6. *Be it further enacted,* That nothing in

---
---

this Act shall be so construed to amend or repeal the railroad fence and stock law.

"SEC. 7. *Be it further enacted*, That the provisions of this Act shall apply to all the counties in this State which have a population of 35,100 and over, which adjoin any county or counties falling under the provisions and description of the first section of this Act. Any county in this State may come under the action of this law by submitting the question to a vote of the qualified voters of the county at an election to be ordered by the County Court at a quarterly term; and if a majority of said votes shall be cast in favor of said law, then said law shall apply to said county, regardless of its population.

"SEC. 8. *Be it further enacted*, That this Act take effect from and after the first day of January, 1896." Acts 1895, Ch. 182, pp. 380, 381.

It will be noticed, at once, that the first section of the Act creates an offense, and makes it applicable to some counties and not to others; and that the particular counties to which it applies are to be determined alone by their respective populations, within certain specified limits, "according to the Federal census of 1890," all other counties being excluded from its operation. That special census is expressly made the sole and ever-continuing criterion by which to ascertain what counties shall be, and what counties shall not be, subject to the law; and that, too, for all time to come, and without refer-

Sutton *v.* State.

ence to changes of condition or population subsequently occurring. Those counties included by the figures found in the Federal census of 1890 are included in the operation of the law forever, and, likewise, those counties excluded by the figures found in that census are excluded from the law's operation forever; the question of inclusion in, or exclusion from, the ameliorations and burdens of the law, not being affected, in the least, by subsequent increase or decrease in population, however great or whenever occurring. The law does not apply to all counties having a population within the prescribed limits in 1895, when it was passed, nor in any future year when it may be violated; but it applies only to those counties having such population in 1890, by the Federal census of that year. As a consequence, the law may be applicable to some counties and not to others having populations within the same limits, when it was passed, or at some time thereafter; and it may also be applicable alike to some counties within and to others without those limits, at the time of its passage or subsequently. The law, when attempted to be enforced, may, by reason of the controlling effect of a long past census, be found to apply to some counties and not to others then having the same population; and, for the same reason, it may also be found to apply alike to any number of counties, at the time having different populations. Or, to state the same thing differently and more briefly, the law, as

passed, includes some counties and excludes others of the same population at the time of the offense; and it also includes in the same class counties having different populations when the offense was committed.

To illustrate: Each of the counties, A and B, now has a population within the limit of 30,000 to 34,000, but the law applies to A, and not to B, because A had a population of 31,000, and B of only 29,000, by the census of 1890; and each of the counties, C and D, now has a population within the same limit, yet the law applies to C, and not to D, because C had 33,000 and D 35,000 by that census. Thus, it appears that the law does not apply to all counties now having the same limit of population; only those within the limit by the census of 1890 are included. Those coming within the limit since that time by change of population, whether by increase, as in case of B, or by decrease, as in case of D, are excluded, with no possibility of ever being included.

Next, let us illustrate the fact that the law applies alike to counties now having different populations: M now has 31,000 and N 29,000, O 33,000 and P 35,000, two of the four (N and P) being without, and two (M and O) being within the limit of 30,000 to 34,000. Yet, notwithstanding the difference now existing, the law applies equally to all, because all were within that limit in 1890.

Similar illustrations might be given in connection

Sutton *v* State.

with the other limit or "55,000 and over," but we forbear.

Such legislation is obviously partial in the objectionable sense, and, being so, it is unconstitutional and void. It violates § 8 of Art. I. of the Constitution, which is as follows: "That no man shall be taken or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land." It deprives the citizen of his "property" by a fine and a lien (§§ 3 and 4), and yet it is not "the law of the land," because it does not apply equally and alike to all counties, now and hereafter having the same population—does not extend to and embrace all persons who are, or may come into the like situation and circumstances. *Vanzant* v. *Waddel*, 2 Yer., 259; *Wally* v. *Kennedy*, *Ib.*, 555; *Bank* v. *Cooper*, *Ib.*, 600; *Jones* v. *Perry*, 10 Yer., 71; *Sheppard* v. *Johnson*, 2 Hum., 296; *Budd* v. *The State*, 3 Hum., 483; *Mayor* v. *Dearmon*, 2 Sneed, 103; *Brown* v. *Eaywood*, 4 Heis., 357; *State* v. *Burnett*, 6 Heis., 186; *State* v. *Rauscher*, 1 Lea, 97; *Davis* v. *The State*, 3 Lea, 379; *Maney* v. *The State*, 6 Lea, 221; *Hatcher* v. *The State*, 12 Lea, 371; *Woodard* v. *Brien*, 14 Lea, 523.

For a similar reason the Act is also violative of the first clause of § 8 of Art. XI. of the Constitution, which is as follows: "The Legislature shall

have no power to suspend any general law for the benefit of any particular individuals, nor to pass any laws for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law."

It grants to landowners in some counties the protection of a penal statute and the advantage of a lien on trespassing live stock, which protection and advantage cannot, by the same law, be extended to landowners in other counties that now have, or may hereafter have, the same population—that are, or may in the future be, in the like situation and circumstances. The Act held to be unconstitutional in the case last cited, like this Act of 1895, limited its application to counties having a certain population by a past census. In the opinion the Court said: "But by the express terms of the Act in question a judgment rendered against a citizen of any county having, by the census of 1870, a population of 40,000, which, as before stated, can only mean a citizen of Davidson or Shelby County, shall not be a lien upon his land affecting third persons, without actual notice, unless an abstract of the same is registered, as prescribed by said Act, thus giving an immunity from the operations of the general laws affecting the rights of property to cit-

izens of those two counties that cannot be enjoyed by any of the citizens of any of the other counties of the State. And it is, by the very terms of the Act, utterly impossible for them ever to bring themselves within its provisions, for its operation is restricted to those counties that had a population of not less than 40,000 by the census of 1870. Hence, although other counties of the State may have acquired, since that census, and might now possess, that amount of population, or double that amount, they cannot come within its provisions because they did not have that amount of population by the census of 1870." 14 Lea, 523, 524.

Because of the infirmities so pointed out, the Act was held to be obnoxious to. the Constitution, and void. *Ib.*, 525.

The cases of *Memphis* v. *Fisher*, 9 Bax., 239, and *Burkholtz* v. *The State*, 16 Lea, 71, were decided, in part, upon the same reasoning as that quoted above. The limits of the Act before us are so fixed and circumscribed, with reference to population at a prescribed date in the past, that no included county can ·ever be excluded, and no excluded county can ever be included, though the natural changes of time, already elapsed and hereafter elapsing, may be such as would otherwise transfer given counties from the excluded to the included class or classes, and *vice versa*. The Act violates §8 of Art. I. of the Constitution, by imposing the burden of a fine and· a lien upon citizens of some

45—12 P

counties and not upon like citizens in other counties that are, or may be, in the like situation and circumstances; and it violates the first clause of § 8 of Art. XI. of the Constitution by conferring the advantages of a penal law and a property lien upon citizens of some counties which cannot, by the same law, be extended to like citizens of other counties that are, or may be, in the like situation and circumstances.

Thus far the Act has been considered, and criticism indulged, not with reference to the classes established, but only in respect of the inexorable and never-ceasing requirement that the figures defining those classes shall be taken alone and always from the census of 1890. Aside from, and in addition to that fatal test for the application and non-application of the law to the different counties of the State, there is another ground upon which the Act must be held to be invalid. By reading the first and seventh sections of the Act together it readily appears that the law was intended to embrace four different classes of counties, and to omit all others. The first section embraces those counties having a population (1) of not less than 30,000 nor more than 34,000, and (2) of 55,000 and over, by the Federal census of 1890; and the seventh section embraces (3) those counties having a population of 35,100 and over, if adjoining some county of the first or second class, and (4) those counties which, upon a submission by their Quarterly Courts,

may cast a majority of their respective votes in favor of the law.

What is the reason for these strange and peculiar classifications? No reason is given or appears in the Act itself. None is discovered in the past history or present condition of the different counties included and excluded, nor in their local relations with each other; none is suggested by learned counsel, nor perceived by the Court. Manifestly, they are not based upon any supposed difference in pursuit, in natural resources, or peculiar situation.

Reading the first section, one naturally asks: Why should the law, with its burdens and its advantages, be made to apply to counties having a population of 30,000, and not to those having 29,900, 28,000, or 27,000? Why to those having 34,000, and not to those having 34,500, 35,000, or 36,000? Why to those having 55,000 and over, and not to those having 50,000, 52,000, or 54,000? Why to those within the narrow limit of 30,000 to 34,000, and not to any within the broader limit of 34,000 to 55,000?

No rational answer is found for any of these questions. The strangeness and confusing feature of the Act are made greater instead of less by the seventh section. Upon that section the puzzling inquiries at once arise: Why should a county with 35,100 people be embraced in the law, if it adjoins some county embraced by the first section, and excluded if it does not adjoin such county? How

does the conjunction or disjunction afford a reason for the application or nonapplication of the law? Why should a county with 35,100 inhabitants, and the conjunction indicated, be embraced, and another county with such conjunction and 35,090 inhabitants be not embraced? Why the skip of 1,100 from 34,000 to 35,100?

It is no answer to the strange peculiarity of the law in the respects mentioned to say that the excluded counties may become included by a vote of their people, as provided in the latter part of the seventh section. That provision does not change or supersede the three preceding classes, but introduces another one. The counties of those three classes are included absolutely, whether they will to be or not; their position under the law is irrevocably fixed. Why this difference? Why should the operation of the law be conditional as to some counties and unconditional as to others? Why should the law apply to some counties without the vote of the people, and to others only upon a vote? And, as to the latter, why should the right to an election be conditioned solely upon the discretionary order of the Quarterly Court? The classifications are unnatural, arbitrary, and capricious, and, being so, the statute is, for that reason, unconstitutional, null, and void.

That such legislation is obnoxious to the Constitution was recognized as an invariable and well-settled rule in *Demoville* v. *Davidson County*, 87 Tenn., 214, in *Railroads* v. *Crider*, 91 Tenn., 490,

and in *State* v. *Alston*, 94 Tenn., 674, although the different Acts under consideration in those cases were found not to be subject to that objection. The rule was both recognized and applied to the invalidation of the Act involved in the noted case of *The Stratton Claimants* v. *The Morris Claimants*, 89 Tenn., 500.

It was well said by Special Judge Baxter, speaking for the Court, in the last-named case: "We conclude, upon a review of the cases referred to above, that whether a statute be public or private, general or special in form, if it attempts to create distinctions and classifications between the citizens of this State, the basis of such classification must be natural, and not arbitrary. If the classification is made under Art. XI., §8, of the Constitution, for the purpose of conferring upon a class the benefit of some special right, privilege, immunity, or exemption, there must be some good and valid reason why that particular class should alone be the recipient of the benefit. If the classification is made under Art. I., §8, of the Constitution, for the purpose of subjecting a class to the burden of some special disability, duty, or obligation, there must be some good and valid reason why that particular class should be subjected to the burden." 89 Tenn., 534, 535.

No such reason underlies the classifications made in the Act before us, either in respect of the benefit conferred or of the burden imposed.

We do not mean to say that all legislation intended to affect a particular class, and not the public at large, is obnoxious to the Constitution, and therefore invalid, but only that such legislation, to be constitutional and valid, must possess each of two indispensable qualities. First, it must be so framed as to extend to and embrace equally all persons who are or may be in the like situation and circumstances, and, secondly, the classification must be natural and reasonable, not arbitrary and capricious.

The present Act possesses neither of those qualities. The other objections urged against the Act need not be considered.

The motion to quash should have been sustained, and, that not having been done, the judgment should have been arrested.

Reverse, and discharge the plaintiff in error.