RAILROAD *v.* HARRIS.

*(Knoxville.*    December 3, 1897.)

1. TAXATION.   *Estoppel to deny exemption from ad valorem taxes.*

By demanding and receiving from a railroad company a privilege tax laid by statute upon railroads not paying *ad valorem* taxes, the State precludes itself from asserting contemporaneous liability of such company for *ad valorem* taxes.   *(Post, pp. 688–691.)*

Cases cited: Railroad *v.* Hicks, 9 Bax., 442; 71 Fed. Rep., 314.

2. SAME.   *Power to exempt.*

Doctrine re-affirmed, that under Constitution of 1834 the Legislature had power to make irrevocable grants of exemption from taxation by charter provisions. *(Post, pp. 691, 692.)*

Constitution construed: U. S. Const., Art. I., Sec. 10.   State Const. (1834), Art. II., Sec. 28; Art. XI., Sec. 7.

Cases cited: Memphis *v.* Bank, 91 Tenn., 585; Bank *v.* State, 9 Yer., 490; Memphis *v.* Hernando Ins. Co., 6 Bax., 527; State *v.* Butler, 13 Lea, 408; State *v.* Butler, 86 Tenn., 614; Memphis *v.* Bank, 91 *Ib.*, 546; Memphis *v.* Home Ins. Co., *Ib.*, 561; State *v.* Bank of Commerce, 95 *Ib.*, 226; 4 Wheat., 518; 95 U. S., 684.

3. SAME.   *Strict construction against exemptions.*

A clear grant of organic or valid statute law must be shown by one who claims exemption, total or partial, from either *ad valorem* or privilege taxation.   Every presumption is against any surrender of the taxing power, and every doubt must be resolved in favor of the State.   Unless the intention to surrender that power is manifested by words too plain to be mistaken, it must be held still to exist.   *(Post, pp. 693–696.)*

Cases cited: Memphis *v.* Bank, 91 Tenn., 550; Memphis *v.* Home Ins. Co., *Ib.*, 562; Memphis *v.* Bank, *Ib.*, 579; Turnpike Cases, 92 *Ib.*, 373; State *v.* Bank, 95 *Ib.*, 227; Wilson *v.* Gaines, 9 Bax., 551; 16 How., 435; 18 Wall., 226; 21 *Ib.*, 498; 95 U. S., 686; 98 *Ib.*, 559; 117 *Ib.*, 136; 120 *Ib.*, 569; 143 *Ib.*, 195; 10 How., 376; 116 U. S., 665; 132 *Ib.*, 185; 161 *Ib.*, 146; 164 *Ib.*, 666.

Railroad v. Harris.

4. SAME. *Charter exemption construed.*

An exemption from privilege taxation is not included in the exemption by charter of the capital stock, dividends, road, fixtures, depots, workshops, and vehicles of a railroad company. (The Court indicates that if the question were involved, and an open one, it would hold this exemption did not embrace and protect from *ad valorem* taxation either the "franchise" or "surplus" of the corporation.) (*Post, pp. 696–699.*)

Cases cited: Railroad v. Morrow, 87 Tenn., 406; Railroad v. Bate, 12 Lea, 573; State v. Bank, 95 Tenn., 222; 161 U. S., 134, 149.

5. SAME. *Exemption from ad valorem does not embrace privilege taxes.*

Exemption from *ad valorem* taxation does not include exemption from privilege taxation. The former is laid upon property values, and the latter upon occupations. (*Post, pp. 699–701*).

Cases cited and approved: Turnpike Cases, 92 Tenn., 372; 109 U. S., 398; 161 U. S., 148; 143 U. S., 195; 164 U. S., 666.

Cases cited and distinguished: Memphis v. Bank, 91 Tenn., 546; Memphis v. Hernando Ins. Co., 6 Bax., 527; Bank v. State, 9 Yer., 490.

6. SAME. *Privilege tax is not levied upon exemption.*

A privilege tax levied upon railroad companies that do not pay *ad valorem* tax is a tax upon the occupation of operating such roads, and not a tax upon their exemption from *ad valorem* taxation. (*Post, pp. 701–703.*)

Acts construed: Acts 1889, Ch. 130; Acts 1891, Ch. 25 (Ex. Ses.); Acts 1893; Ch. 89; Acts 1895, Ch. 4 (Ex. Ses.); Acts 1897, Ch. 2.

Cases cited: Turnpike Cases, 92 Tenn., 369.

7. SAME. *Creation of privileges. Rule.*

The Legislature has a very large discretion in the creation and taxation of privileges. Any occupation, business, employment, or the like affecting the public may be classed and taxed as a privilege. (*Post, pp. 701, 702.*)

Constitution construed: Art. II., Sec. 28.

Cases cited: Memphis v. Bank, 91 Tenn., 588; Reelfoot Lake, etc., District v. Dawson, 97 Tenn., 151; Turnpike Cases, 92 Tenn., 372; Kurth v. State, 86 Tenn., 136; Jenkins v. Ewin, 8 Heis., 456; Wiltse v. State, 8 Heis., 544; State v. Schlier, 3 Heis., 281; Columbia v. Guest, 3 Head, 414; Robertson v. Hennegar, 5

Railroad v. Harris.

Sneed, 258; French v. Baker, 4 Sneed, 193; Mabry v. Tarver, 1 Hum., 94.

8. CONSTITUTIONAL LAW. *Presumption as to constitutionality of statute.*

All intendments are in favor of constitutionality of statutes passed with requisite form and ceremonies, and where one of two reasonable constructions would render the law obnoxious to the Constitution, and the other would not, the latter will be adopted by the Courts. (*Post, pp. 703, 704.*)

Cases cited and approved: State v. Yardley, 95 Tenn., 560; Cole Mfg. Co. v. Falls, 90 *Ib.*, 469; Ellis v. State, 92 *Ib.*, 93; Railroads v. Crider, 91 *Ib.*, 507; 12 Wheat., 436.

9. SAME. *"Law of the land" and "due process of law" are synonymous.*

"Due process of law" and "the law of the land," as used in Constitutions, are synonymous phrases, and that which in statutes is violative of one is violative of the other also, and *vice versa.* (*Post, p. 704.*)

Constitution construed: U. S. Const., Fourteenth Amendment; State Const., Art. I., Sec. 8.

Cases cited and approved: State v. Staten, 6 Cold., 234; Knox v. State, 9 Bax., 207; 16 Pa. St., 256; 11 Mich., 129; 18 How., 272; 96 U. S., 97.

10. SAME. *Corporation is a "person" or a "man."*

A corporation is a "person," within the meaning of the constitutional provision against taking property without due process of law; and it is a "man," within the constitutional provision against taking property otherwise than by "the law of the land." (*Post, pp. 704, 705.*)

Constitution construed: U. S. Const., Fourteenth Amendment; State Const., Art. I., Sec. 8.

Cases cited and approved: 164 U. S., 578; 165 *Ib.*, 150.

11. SAME. *Classification of railroads for privilege taxes, valid.*

Classification of railroads for privilege taxation, by imposing such tax alone on those which do not pay *ad valorem* taxes, is not an unnatural and unreasonable classification which makes the tax a deprivation of property without due process of law, although there are but two railroads in the class. (*Post, pp. 704–707.*)

Railroad *v.* Harris.

Cases cited and approved: Sutton *v.* State, 96 Tenn., 696; State *v.* Alston, 94 *Ib.*, 674; Turnpike Cases, 92 *Ib.*, 369; Railroads *v.* Crider, 91 *Ib.*, 490; Stratton *v.* Morris, 89 *Ib.*, 500; Demoville & Co. *v.* Davidson County, 87 *Ib.*, 214; Budd *v.* State, 3 Hum., 492; Debardelaben *v.* State, *ante*, p. 649; 163 U. S., 81; 165 *Ib.*, 150, 180, 628; 164 *Ib.*, 578; 134 *Ib.*, 232; 151 *Ib.*, 470.

12. SAME. *Statute imposing tax does not diminish corporate powers, when.*

The constitutional provision against diminishing corporate powers by special laws does not apply to the mere imposition of a privilege tax on a company which is not exempt therefrom. (*Post, pp. 707, 708.*)

Constitution construed: Art. XI., Sec. 8.

Cases cited and approved: Stratton *v.* Morris, 89 Tenn., 522; Sutton *v.* State, 96 Tenn., 705; Debardelaben *v.* State, *ante*, p. 649; Memphis *v.* Bank, 91 Tenn., 583.

13. SAME. *Good faith or motive of Legislature not inquired into.*

The good faith of the Legislature in imposing a privilege tax on railroad companies that have charter exemptions from *ad valorem* taxation, or the motive to deprive them of that exemption, cannot be inquired into by the Courts. (*Post, pp. 708, 709.*)

Cases cited and approved: Sutton *v.* State, 96 Tenn., 698; Cole Mfg. Co. *v.* Falls, 90 Tenn., 481; Williams *v.* Nashville, 89 Tenn., 488; Peck *v.* State, 86 Tenn., 262; Ballentine *v.* Pulaski, 15 Lea, 634; Lynn *v.* Polk, 8 Lea, 229; Railroad *v.* County Court, 1 Sneed, 668; Ferguson *v.* Bank, 3 Sneed, 609.

14. SAME. *Power to impose and fix amount of privilege tax.*

A Legislature which has the legal right to impose a privilege tax can exercise its discretion as to the amount of the tax. (*Post, p. 709.*)

Cases cited and approved: Jenkins *v.* Erwin, 8 Heis., 477; 18 Wall., 231; 127 U. S., 141; 134 U. S., 594.

15. SAME. *Tax does not affect interstate commerce, when.*

A railroad privilege tax "for taking up and transporting freight and passengers from one point in this State to another point in this State," does not affect interstate commerce. (*Post, pp. 709–712.*)

Constitution construed: U. S. Const., Art. I., Sec. 8.

Acts construed: Acts 1893, Ch. 89; Acts 1895, Ch. 4 (Ex. Ses.).

Railroad v. Harris.

Cases cited: State v. Scott, 98 Tenn., 254; 164 U. S., 650; 141 U. S., 58; 9 Wheat., 195; 3 Fla., 162 (S. C., 25 L. R. A., 120); 55 N. J. L., 529 (S. C., 25 L. R. A. 134).

FROM KNOX.

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

LUCKY, SANFORD & TYSON and W. A. HENDERSON for Railroad.

Attorney-general PICKLE and CORDELL HULL for State.

CALDWELL, J. The State, through James A. Harris, Comptroller of the Treasury, demanded of the Knoxville & Ohio Railroad Company privilege taxes for the years 1893, 1894, 1895, and 1896, in all $4,820. Controverting its liability for these taxes, the railroad company, pursuant to the statute in relation to disputed revenue claimed by the State (Code, M. & V., §§ 926–928; Shannon, §§ 1059–1061), paid them under protest, and within thirty days from the time of payment brought this action to recover from the State the sum so paid. The suit was commenced in the Chancery Court of Knox County against the Comptroller, to whom the taxes were paid.

Railroad *v*. Harris.

The complainant alleged, in substance, that it was a Tennessee corporation, owning and operating a line of railroad in this State between twenty-five and one hundred miles in length, and having rail and traffic connection at its termini with other railroads, which deliver certain of its freight and passengers at points of destination in other States, and from which it receives freight and passengers starting in other States and destined to points on its line in this State; that it was successor, through judicial sale, to the Knoxville & Kentucky Railroad Company, and, as such, was, by the terms of the latter's charter, exempt from all taxation; that its successorship to that company, and consequent exemption from *ad valorem* taxes, had been more than once adjudged in Courts of competent jurisdiction; that notwithstanding this, the Legislature of the State had attempted, by various Acts, to impose a privilege tax upon complainant; that by virtue of these Acts, though obnoxious to the Federal and State Constitutions in several designated particulars, the Comptroller had wrongfully required the complainant to pay the sum for which it sues.

The defendant demurred to the bill upon several grounds. The Chancellor overruled the demurrer, and, exercising a legal discretion (Code, § 3157; M. & V., § 3874; Shannon, § 4889) permitted an appeal. On reaching this Court the cause was transferred, under Sec. 14, Ch. 76, Acts 1895, to the Court of Chancery Appeals for hearing and decision. That

15 P—44

tribunal sustained the demurrer and dismissed the bill. From the decree of dismissal the complainant appealed and brought the cause into this Court again.

Since a demurrer raises questions of law only, and causes decided by the Court of Chancery Appeals are appealable on all questions of law (Acts 1895, Ch. 76, Sec. 11), and the complainant has prosecuted a broad appeal, the present cause is now before this Court, as it was before the other tribunals, for consideration and determination of the legal questions raised by the bill and demurrer.

Owing to the State's attitude in this case, it is not worth while to decide whether the complainant is the legal successor to the Knoxville & Kentucky Railroad Company, and in that relation entitled to exemption from *ad valorem* taxation to the extent provided in the latter's charter, as it was held to be in *Railroad Co.* v. *Hicks*, 9 Bax., 442, and in *Buchanan* v. *Railroad Co.*, 71 Fed. Rep., 314.

The statutes lay a privilege tax on such railroad companies only as operate or control lines in this State and are not subject to *ad valorem* taxation; hence, the State, by its demand and receipt of the money here involved, treated the complainant as in that situation, and thereby precluded itself from denying, in this suit, that such was its real status before the law. Therefore, without approving or disapproving the decision made in the two cases just mentioned, or deciding the question anew, it will be assumed that the complainant is really the successor

to the Knoxville & Kentucky Railroad Company, and, as such, is entitled to exemption from *ad valorem* taxation to the extent provided by that company's charter. These observations, however, are scarcely more than introductory. They do not solve any of the seriously litigated questions. *Ad valorem* taxation and privilege taxation are different things, having no necessary connection. They are distinct burdens laid by the government upon those receiving its protection, and, when legally imposed, must be borne as a recompense for that protection. The same person may be subject to both, or to one and not the other. Subjection to one does not mean subjection to the other, nor does exemption from one include exemption from the other. Hence, the assumption herein that the complainant has the same exemption from *ad valorem* taxation that its predecessor, the Knoxville & Kentucky Railroad Company, had under its charter, does not imply that it has exemption from privilege taxation also. Whether it has the latter exemption is to be determined by an original construction of the charter. This question did not arise in any of the previous litigations with this complainant, but is presented for the first time in this cause. Liability for *ad valorem* taxes only was involved in the former cases.

Under the Constitution of 1834 (Art. II., Sec. 28, and Art. XI., Sec. 7), which was in force at the date of this charter, the Legislature was permitted to grant exemption from both *ad valorem* and priv-

ilege taxation (*Memphis* v. *Memphis City Bank*, 91 Tenn., 583–585), and if it did so in this instance the State is conclusively bound thereby, notwithstanding a subsequent change and reversal of governmental policy and law, as shown by the Constitution of 1870 (Art. II., Sec. 28, and Art. XI., Sec. 7; *Memphis* v. *Memphis City Bank*, 91 Tenn., 585–589), and legislation thereunder.

Valid corporate charters have long been held to be contracts, within the meaning of that provision of the Federal Constitution (Art. I., Sec. 10), and of the State Constitution (Art. I., Sec. 20), which prohibits the passage of any "law impairing the obligation of contracts." *Dartmouth College* v. *Woodward*, 4 Wheat., 518; *Farrington* v. *Tennessee*, 95 U. S., 684; *Bank* v. *State*, 9 Yer., 490; *Memphis* v. *Hernando Ins. Co.*, 6 Bax., 527; *State* v. *Butler*, 13 Lea, 408; *State* v. *Butler*, 86 Tenn., 614; *Memphis* v. *Bank*, 91 Tenn., 546; *Memphis* v. *Home Ins. Co.*, *Ib.*, 561; *State* v. *Bank of Commerce*, 95 *Ib.*, 226.

It follows, therefore, that if the charter of the Knoxville & Kentucky Railroad Company included exemption from privilege taxation, as well as from *ad valorem* taxation, and if the complainant has acquired all the exemption of that charter (which latter proposition is assumed), the enactments, under which the complainant was required to pay the privilege taxes here involved, are obnoxious to both Federal

and State Constitutions, in that they impair the obligation of the charter contract.

Did that charter grant exemption from privilege taxation ?

Taxes are the life-blood of civil government. The right of taxation is an attribute of sovereignty. It is inherent in the State and essential to the perpetuity of its institutions; consequently, he who claims exemption must justify his claim by the clearest grant of organic or statute law. Every presumption is against any surrender of the taxing power, and every doubt must be resolved in favor of the State. Unless the intention to surrender that power is manifested by words too plain to be mistaken, it must be held still to exist. *Memphis* v. *Bank*, 91 Tenn., 550; *Memphis* v. *Home Insurance Co.*, *Ib.*, 562; *Memphis* v. *Memphis City Bank*, *Ib.*, 579; *Turnpike Cases*, 92 Tenn., 373; *State* v. *Bank of Commerce*, 95 Tenn., 227; *Wilson* v. *Gaines*, 9 Bax., 551; *Ohio Insurance Co.* v. *Debolt*, 16 How., 435; *The Delaware Railroad Tax*, 18 Wall., 226; *Erie Railway Co.* v. *Pennsylvania*, 21 Wall., 498; *Farrington* v. *Tennessee*, 95 U. S., 686; *St. L., I. M. & S. Ry. Co.* v. *Loftin*, 98 U. S., 559; *Tennessee* v. *Whitworth*, 117 U. S., 136; *C., B. & K. C. R. R. Co.* v. *Missouri*, 120 U. S., 569; *New Orleans R. R. Co.* v. *New Orleans*, 143 U. S., 195; *Philadelphia, etc.*, v. *Maryland*, 10 How., 376.

In the case last cited, Chief Justice Taney, speaking for the Supreme Court of the United States,

said: "This Court on several occasions has held that the taxing power of a State is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms." *Ib.*, 393.

In *Vicksburg, S. & P. R. R. Co.* v. *Dennis*, 116 U. S., 665, decided many years later by the same Court, Mr. Justice Gray, after quoting the foregoing language of Chief Justice Taney, said: "In the subsequent decisions the same rule has been strictly upheld and constantly reaffirmed in every variety of expression. It has been said that 'neither the right of taxation nor any other power of sovereignty will be held by this Court to have been surrendered, unless such surrender is expressed in terms too plain to be mistaken;' that 'exemption from taxation should never be assumed unless the language used is too clear to admit of doubt;' that 'nothing can be taken against the State by presumption or inference; the surrender, when claimed, must be shown by clear, unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power; if a doubt arise as to the intent of the Legislature, that doubt must be solved in favor of the State;' that a State 'cannot, by ambiguous language, be deprived of this highest attribute of sovereignty;' that any contract of exemption 'is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly required;' and that such exemptions are regarded 'as in derogation of the

sovereign authority and of common right,' and therefore not to be extended beyond the exact and express requirement of the grants construed *strictissimi juris.*"

Chief Justice Fuller, in *Railroad* v. *Thomas*, 132 U. S., 185, expressed the rule thus: "Exemptions from taxation are regarded as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the language used, construed *strictissimi juris.*"

Mr. Justice Peckham, in a more recent case, phrased the rule as follows: "Taxes being made the sole means by which sovereignties can maintain their existence, any claim on the part of anyone to be exempt from the full payment of his share of taxes on any portion of his property, must, on that account, be clearly defined and founded upon plain language; there must be no doubt or ambiguity in the language used upon which the claim to exemption is founded. It has been said that a well-founded doubt is fatal to the claim. No implication will be indulged in for the purpose of construing the language used as giving the claim to exemption, where such claim is not founded upon the plain and clearly expressed intention of the taxing power." *Bank of Commerce* v. *State of Tennessee*, 161 U. S., 146.

In a still later case Mr. Justice Brewer said: "It is abundantly established by the decisions of this, as

of other Courts, that exemptions from taxation are to be strictly construed, and that no claim of exemption can be sustained unless within the express letter or necessary scope of the exempting clause." *Ford* v. *Delta & Pine Land Co.*, 164 U. S., 666.

This rule of construction, so firmly fixed in the jurisprudence of this country, is applicable, in every case, to *ad valorem* and privilege taxation equally, and whether the claim be of total or partial exemption. The exact measure of immunity in each case is to be ascertained from the language employed in the particular grant.

The exemption clause in the charter of the Knoxville & Kentucky Railroad Company, under which the complainant asserts immunity, is found in Sec. 33, Ch. 217, of the Acts of 1855–56, and is as follows: "That the capital stock in said company, the dividends thereon, and the road and fixtures, depots, workshops, warehouses, and vehicles of transportation belonging to said company, shall be forever exempt from taxation; and it shall not be lawful for the State, or any corporate or municipal police, or other authority thereof, or of any town, city, county, or district thereof, to impose any tax upon such stock or dividends, property or estate; *Provided,* The stock or dividends, when the said dividends shall exceed the legal interest of the State, may be subject to taxation by the State, in common with, and at the same rate as, money at interest; but no tax shall be imposed so as to reduce the part of the divi-

dends to be received by the stockholders below the legal interest of the State.''

To meet the condition contained in the proviso, the complainant alleged, as a matter of fact, that ''no dividend had ever been paid on its capital stock.'' The demurrer admitted the allegation. Thus it is established that the time has not yet arrived for the State to resume any_ part of the taxing power actually surrendered by the preceding portion of the section. What part of that power was there surrendered? For reasons already stated it is assumed, and the State is precluded from denying, that the corporation was granted complete immunity from *ad valorem* taxation, and it was so adjudged in the two cases cited. It cannot escape observation, however, that only certain parts of the corporation's property, present and prospective, were mentioned for exemption; and that, if the question of *ad valorem* taxation were now before the Court, the exemption should be limited to those parts.

The company's franchise and its surplus are two elements of corporate property not mentioned or included. The former of these is a subject of taxation, and when not exempt must be included in the assessment (*Street Railroad Co* v. *Morrow*, 87 Tenn., 406; *Railroad* v. *Bate*, 12 Lea, 573), and the same is true of the latter. *Bank of Commerce* v. *State of Tennessee*, 161 U. S., 134; *County of Shelby* v. *Union and Planters' Bank*, *Ib.*, 149; *State* v. *Bank of Commerce*, 95 Tenn., 222. Corporate property has

been said to consist of three ·separate and distinct things—capital stock, franchise, and surplus. *The People, ex rel.*, v. *Coleman* (N. Y.), 34 Am. & Eng. Corp. Cases, 224.

In this view the word "property," in the exemption clause of this charter, might well be held to include franchise and surplus but for its restrictive qualification. The exemption is not of property in the broadest sense, but of "such property," meaning that previously enumerated. The grant particularized the things to be exempt, and for that reason the exemption should be limited to the particulars of the enumeration.

About exemption from privilege taxation there appears to us less room for plausible debate. After a careful study of the exemption clause in all of its parts, this Court is not able to discover even an indication of an· intention on the part of the Legislature thereby to grant immunity from privilege taxation; and much less is it able to discover in the language used an unmistakable purpose to do so. Such an intention is not expressed in the words employed, nor can it be legitimately implied from them. The thing upon which a privilege tax might be laid—the company's business or occupation—was not mentioned, directly or indirectly, in the whole clause. Only those things upon which an *ad valorem* tax might be laid—property of different kinds— were enumerated or included. The Legislature well knew of the two kinds of taxation to which the

company might be subjected, and of the things upon which the one tax and the other were separately leviable (Const. 1834, Art. II., Sec. 28); and with that knowledge it granted immunity to certain of the things subject to *ad valorem* taxation, but did not mention or include that thing which alone was subject to privilege taxation. This action of that body can be explained upon no other reasonable hypothesis than that it intended, for reasons satisfactory to itself, and which no one may gainsay, to grant the immunity to the particular property named from that kind of taxation to which it. would otherwise be subject, and to nothing else, and from no other taxation. *Expressio unius est exclusio alterius.*

The scope of the exemption given in the preceding portion of the section is in no degree enlarged, but only conditionally limited by the proviso. The words, "taxation" and "no tax," occurring in the latter, relate exclusively to the same kind of taxation previously contemplated, and to the same things previously enumerated for exemption, and do not refer to any different kind of taxation, or introduce any new or additional subject-matter. It is worthy of repetition that privilege taxation relates to a business, an occupation, or the like, and *ad valorem* taxation to property; and that neither includes the other. In the present case the complainant is treated as having complete exemption from the latter, and it is urged that this necessarily involves exemption from the former. Not so. Exemption from *ad*

*valorem* taxation no more includes exemption from privilege taxation than the imposition of an *ad valorem* tax includes the imposition of a privilege tax. If one imposition does not embrace both, one exemption does not embrace both. No more is it an answer to this interpretation to say that it leaves the immunity allowed less valuable to the complainant than it would otherwise be. That was a matter for the consideration of the Legislature making the grant. *Memphis Gas Co.* v. *Shelby County*, 109 U. S., 398; *Turnpike Cases*, 92 Tenn., 372, 373. A like objection, by the holders of exempt shares, to the taxation of a bank's surplus, though conceded to be sound in fact, was overruled as untenable in law in the recent case of *Bank of Commerce* v. *State of Tennessee*, 161 U. S., 148.

It is not to be implied from what has been said that no exemption from privilege taxation could have been granted without naming the subject of such taxation and exempting it in so many words. That result could have been accomplished by a statement that the company was to have exemption from all taxation, or by any other form of expression that would, beyond doubt, disclose such an intention. But in this case, as in that of *New Orleans Railroad Co.* v. *New Orleans*, 143 U. S., 195, there is "no evidence of an intention" to grant exemption from privilege taxation.

The exemption clause construed in *Memphis* v. *Bank*, 91 Tenn., 546, and held to include privilege

taxation, recited that the charter tax named should "be in lieu of all other taxes." Of the same import were the exemption clauses before the Court in *Memphis* v. *Hernando Insurance Co.*, 6 Bax., 527, and in *Bank* v. *State*, 9 Yer., 490, where like holdings were made. Besides the great difference between the language of those grants and that of this one, which is controlling, it may be remarked, in passing, that there was some money consideration for those grants, in the form of a commuted tax, and there was none in this one.

Privilege taxation was not "within the express letter or necessary scope of the exempting clause" (164 U. S., 666) of this charter; hence it was not included, and the subsequent Acts imposing the privilege taxes here complained of do not impair the obligation of the company's charter contract, and thereby violate Sec. 10 of Art. I. of the Federal Constitution, and Sec. 20 of Art. I. of the Constitution of the State.

In the next place, it is alleged and urged against the validity of this legislation that the requisition made under the name of a privilege tax is not such in reality; that the so-called tax is not imposed on the business or occupation of the complainant, which alone could be the subject of privilege taxation, but solely upon an abstract condition, the mere fact of its "exemption from an *ad valorem* tax."

The Constitution of the State (Art. II., Sec. 28) recognizes only two general kinds of taxation—*ad*

*valorem* and privilege. These cover the whole do-
main of taxation, and beyond these the Legislature
may not go in the imposition of taxes. *Memphis*
v. *Memphis City Bank*, 91 Tenn., 588; *Reelfoot Lake
Levee District* v. *Dawson*, 97 Tenn., 151, 168, 169.
In respect of the subjects of the latter 'kind the
legislative discretion has a very comprehensive range.
At the least, any occupation, business, employment,
or the like affecting the public, may be classed and
taxed as a privilege. *Turnpike Cases*, 92 Tenn., 372;
*Kurth* v. *State*, 86° Tenn., 136; *Jenkins* v. *Ewin*,
8 Heis., 456; *Wiltse* v. *State*, *Ib.*, 544; *State* v.
*Schlier*, 3 Heis., 281; *Columbia* v. *Guest*, 3 Head,
414; *Robertson* v. *Hennegar*, 5 Sneed, 258; *French* v.
*Baker*, 4 Sneed, 193; *Mabry* v. *Tarver*, 1 Hum., 94.
The legislation here impeached originated with Sec.
5, Ch. 130, Acts 1889, p. 266, and without mate-
rial change, except in amount of annual tax, has
been re-enacted by each succeeding Legislature. Acts
1891 (Ex. Ses.), Ch. 25, Sec. 4, p. 71; Acts 1893,
Ch. 89, Sec. 5, p. 145; Acts 1895 (Ex. Ses.), Ch. 4,
Sec. 7, p. 592: Acts 1897, Ch. 2, Sec. 6, p. 76.

The provision under which the aggregate sum
here sued for was demanded and collected, so far as
need now be quoted, is in these words: "That the
following corporations shall pay directly to the
Comptroller's office the following taxes on the fol-
lowing privileges: . . . Railroad companies not
paying an *ad valorem* tax to the State, each" a given
amount per annum, according to mileage operated or

controlled.    Acts  1893,  Ch.   89,  Sec.   5,  pp.  143
and 145; Acts 1895, Ex. Ses., Ch. 4, Sec. 7, p. 592.

This  language  discloses,  as  we  think,  an  obvious
intent  on  the  part  of  the  Assembly  to  declare  the
business,  occupation,  or  employment  of  the  class  of
railroad  companies  designated,  to  be  a  privilege,  and
to  impose  a  tax  upon  that  business,  occupation,  or
employment.    The  abstract  condition,  or  fact  of  "not
paying  an  *ad  valorem*  tax  to  the  State," is  not  the
thing  declared  to  be  a  privilege  and  taxed  as  such;
but  it  is  merely  descriptive,  and  serves  only  as  a
designation  of  that  class  of  railroad  companies  whose
business,  occupation,  or  employment  is  made  a  tax-
able  privilege.

In  this  aspect  the  *Turnpike  Cases*,  92  Tenn.,  369,
were  precisely  like  this  one,  though  this  feature  was
not  there  discussed.    The  privilege  tax  there  was
laid  on  turnpike  companies  "that  collect  toll  both
ways."    Yet  the  circumstance  of  collecting  "toll
both  ways"  was  not  the  thing  privileged  and  taxed;
it  was  only  the  means  of  identifying  the  companies
whose  business,  occupation,  or  employment  was  taxed
as  a  privilege.    But  if . there  were  really  a  doubt
(and  there  is  none)  between  this  construction  of  the
present  Acts  and  that  contended  for  by  this  com-
plainant,  and  both  were  plausible,  the  former  would
prevail,  if  for  no  other  reason,  because  it  would
sustain  the  validity  of  the  legislation.

All  intendments  are  in  favor  of  the  constitution-
ality  of  an  Act  passed  with  requisite  form  and  cere-

mony, as was true in this instance; and where one of two reasonable constructions would render the law obnoxious to the Constitution and the other would not, the latter would be adopted by the Courts. Suth. Stat. Con., Sec. 332; Cooley's Const. Lim. (5th Ed.), 218; Black's Const. Law, Sec. 28; *Brown* v. *Maryland*, 12 Wheat., 436; *State* v. *Yardley*, 95 Tenn., 560; *Cole Mfg. Co.* v. *Falls*, 90 Tenn., 469; *Ellis* v. *State*, 92 Tenn., 93; *Railroads* v. *Crider*, 91 Tenn., 507.

Complainant further assails this legislation, and says that it deprives the complainant of its property, "without due process of law," thereby violating Sec. 1, Art. XIV., of the amendments to the Constitution of the United States; and that it deprives complainant of its property otherwise than by "the law of the land," thereby violating Sec. 8., Art. I., of the Constitution of the State.

This double assailment may be treated as one objection, since "due process of law" and "the law of the land" are synonymous phrases, and that which is violative of the one is violative of the other also, and *vice versa.* *State* v. *Staten*, 6 Cold., 234, 244; *Knox* v. *State*, 9 Bax., 207; *Irvine's Appeal*, 16 Pa. St., 256; *Parsons* v. *Russell*, 11 Mich., 129; *Den.* v. *Hoboken Land & Impr. Co.*, 18 How., 272; *Davidson* v. *Board of Admrs.*, etc., 96 U. S., 97, 101; Cooley's Const. Lim., p. 429, *et seq.*

A corporation is a "person" within the meaning of the provision forbidding the deprivation of prop-

Railroad *v.* Harris.

erty "without due process of law" (*Covington & L. Turnpike Road Co.* v. *Sandford,* 164 U. S., 578; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 *Ib.,* 150), and a "man" within that forbidding the deprivation of property otherwise than by "the law of the land." These Acts impose a tax on certain corporations. The tax is to be paid in money, and money is "property;" consequently, the imposition and collection of the tax is a deprivation of property, and the Acts are void, as in conflict with those provisions, if it be true that the tax imposed is collectible otherwise than by "due process of law," or by "the law of the land." The precise objection pressed against the Acts is that they constitute vicious class legislation in that, as alleged in the bill, they apply to only two of the seventy-five railroad companies operating or controlling lines of road in the State, and the classification is unnatural and arbitrary. The Acts do divide the railroad companies in the State into two classes: (1) those "not paying an *ad valorem* tax to the State" and (2) those paying such tax; and they impose a privilege tax upon those of the former class only. This is class legislation, undoubtedly, but it is not of the vicious or forbidden kind. It applies equally to all corporations that are or may be in like situation or circumstances, 'and thereby meets the first requirement of valid class legislation; and it makes a natural and reasonable classification, thereby meeting the other requirement of such legislation. *Sutton* v.

15 P—45

*State,* 96 Tenn., 696, 710; *State* v. *Alston,* 94 *Ib.,* 674; *Turnpike Cases,* 92 *Ib.,* 369; *Railroads* v. *Crider,* 91 *Ib.,* 490; *Stratton Claimants* v. *Morris Claimants,* 89 *Ib.,* 500; *Demoville & Co.* v. *Davidson County,* 87 *Ib.,* 214; *Debardelaben* v. *State, ante,* p. 649; *Lowe* v. *Kansas,* 163 U. S., 81; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 *Ib.,* 150; *Jones* v. *Brim, Ib.,* 180; *Covington & L. Turnpike Road Co.* v. *Sandford,* 164 *Ib.,* 578; *N. Y., N. H. & H. R. R. Co.* v. *New York,* 165 *Ib.,* 628; *Hayes* v. *Missouri,* 120 *Ib.,* 68; *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 *Ib.,* 232; *Columbus S. R. R. Co.* v. *Wright,* 151 *Ib.,* 470.

That it meets the first of these requirements is self-evident, and that it meets the other one becomes manifest when it is considered that those companies upon which the privilege tax is imposed are not otherwise making any contribution to the support of the State government that protects their business and property in the same manner that it does those of the companies of the other class, which are contributing their part to that support by the payment of an *ad valorem* tax. What sounder and more natural reason could be found for a classification than that these are already bearing some of the burdens of government and those are not? A classification with such a reason to support it (and it may have been prompted by others which the Court may not and need not state or discover) cannot justly be characterized as unnatural and arbitrary. The

ground for the classification upheld in the turnpike
cases (92 Tenn., 369) was not so strong, and yet it
was in some degree of the same nature. The Act
there questioned (Ch. 25, Sec. 3, p. 67, Acts 1891,
Ex. Ses.) imposed a privilege tax on all turnpike
companies "that collect tolls both ways," and not
on others. Manifestly the principal, if not the only
reason for this classification, was, that the companies
subjected to the tax were enjoying greater advan-
tages, with the sanction of the State, than those en-
joyed by the companies not so taxed.

It is of no consequence that there may be but two
railroad companies, as alleged in the bill, to which
this privilege tax may apply, for "it matters not
how few the persons are who may be included in
a class. If all who are, or may come into, the like
situation or circumstances, be embraced in the class,
the law is general and not partial." *Stratton Claim-
ants* v. *Morris Claimants*, 89 Tenn., 52; *Budd* v.
*State*, 3 Hum., 492.

It is also alleged and urged that this legislation
is in conflict with Sec. 8, Art. XI., of the State
Constitution, in that it diminishes complainant's cor-
porate "powers" by "special laws." There are
two brief and conclusive answers to this impeach-
ment: (1) The Acts in question are general, and not
special, laws; (2) they do not diminish complainant's
corporate powers. The laws are general within the
meaning of this provision, because, as already seen,
they include equally all persons who are, or may

be, in the situation and circumstances contemplated. In this particular the requirement of Sec. 8, Art. XI., is the same as that of Sec. 8, Art. I., of the Constitution. *Stratton Claimants* v. *Morris Claimants*, 89 Tenn., 522, 523; *Sutton* v. *State*, 96 Tenn., 705, 706; *Debardelaben* v. *State, ante*, p. 649.

The corporate "powers" referred to are not diminished by the imposition of a privilege tax on a corporation that has no legal exemption from such a tax. This is inevitably so, since the imposition of the tax takes away nothing that the corporation had previously. Indeed, the "powers" of a corporation with a legal right to such an exemption would not be diminished by the wrongful imposition and collection of such a tax, because corporate "powers" do not include exemption from taxation. *Memphis* v. *Memphis City Bank*, 91 Tenn., 583. The latter would be an impairment of the obligation of the contract, but not a diminution of corporate powers.

It has been suggested, with the emphasis of repetition, that these Acts were not passed in good faith, but with the unjust motive of depriving the companies affected thereby of an advantage previously conferred. Of this we see no indication. Moreover, the Courts have nothing to do with the motives of the Legislature, nor with the policy or impolicy of its laws. Const., Art. II., Sec. 2; *Sutton* v. *State*, 96 Tenn., 698; *Cole Mfg. Co.* v. *Falls*, 90 *Ib.*, 481; *Williams* v. *Nashville*, 89 *Ib.*, 488; *Peck* v. *State*, 86 *Ib.*, 262; *Ballentine* v. *Pu-*

*laski*, 15 Lea, 634; *Lynn* v. *Polk*, 8 *Ib.*, 229; 1 Sneed, 668; 3 *Ib.*, 609; Cooley's Const. Lim., 202.

A like reply must be made to the other suggestion, that this tax, if now sanctioned, may hereafter be so increased as to equal an *ad valorem* tax, which would make the burden upon complainant as great as if it had no exemption at all. If the Legislature has the legal right to impose a privilege tax, the amount of the imposition is a matter within its discretion. "Our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction." *Delaware Railroad Tax,* 18 Wall., 231; *California* v. *Pacific Railroad Co.*, 127 U. S., 1, 41; *Home Ins. Co.* v. *New York*, 134 *Ib.*, 594; *Jenkins* v. *Ewin*, 8 Heis., 477. If this were not so, the Courts certainly could not anticipate legislative action and pronounce decrees in advance of it.

Finally, it is said that this legislation is unconstitutional and void because it imposes a tax on interstate commerce. The Federal Constitution (Art. I., Sec. 8, Ch. 3) vests in Congress "power to regulate commerce with foreign nations and among the several States, and among the Indian tribes," and in doing so impliedly forbids any State the right to exercise such power without the consent of Congress.

Commerce among the States is usually and appropriately called "interstate commerce." The controlling power of Congress in the regulation of this commerce, and the lack of independent powers in this domain on the part of the States, have been

strongly affirmed and explicitly decided in numerous cases. *Brennan* v. *Titusville*, 153 U. S., 302; *Crutcher* v. *Kentucky*, 141 U. S., 58; *Lyng* v. *Michigan*, 135 U. S., 166; *Robbins* v. *Taxing District*, 120 U. S., 489; *Asher* v. *Texas*, 128 U. S., 129; *Stoutenburgh* v. *Hennick*, 129 U. S., 141; *McCall* v. *California*, 136 U. S., 104; *Leisy* v. *Hardin*, 135 U. S., 108; *Leloup* v. *Mobile*, 127 U. S., 645; *Gibbons* v. *Ogden*, 9 Wheat., 1; *Brown* v. *Maryland*, 12 Wheat., 419; *Welton* v. *Missouri*, 91 U. S., 278.

Every tax on interstate commerce is a burden upon, and, to that extent, a regulation of that commerce; and, when imposed by a State law, and without the assent of Congress, it is illegal, and the law imposing it is obnoxious to the Federal Constitution, and for that reason null and void. *Ib.;* *State* v. *Scott*, 98 Tenn., 254 (S. C., 39 S. W. Rep., 1). Therefore these Acts, which were passed without the assent of Congress, must be adjudged invalid if the tax imposed by them should be found to be upon interstate commerce. The complainant's line of road lies wholly within this State, yet it has traffic connections with other lines extending into other States, and, in that sense, is engaged in *inter*-state, as well as internal or *intra*state, business or commerce. The railroad companies to which the Acts apply are required to pay a privilege tax according to mileage, as follows:

"Each company operating or controlling 400 miles or more of road in this State, for taking up and

transporting freight and passengers from one point to another in this State, per annum, $10,000.

"Each company operating or controlling from 100 to 400 miles of road in this State, for taking up and transporting freight and passengers from one point in this State to another point in this State, per annum, $5,000.

"Each company operating or controlling from 25 to 100 miles of railroad in this State, for taking up and transporting freight and passengers from one point in this State to another point in this State, per annum, $1,000.

"Each company operating or controlling less than 25 miles of railroad in this State, for taking up and transporting freight and passengers from one point in this State to another point in this State, per annum, $100." Acts 1893, Ch. 89, Sec. 5, pp. 143, 145; Acts 1895 (Ex. Ses.), Ch. 4, Sec. 7, p. 592.

There can be no doubt, from this language, that the legislative intent was to impose this tax solely and alone upon business or commerce done wholly within this State—upon internal or *intra*state commerce, as contradistinguished from *inter*state commerce. The imposition is made "for taking up and transporting freight and passengers from one point in this State to another point in this State," in which business there is no element of *inter*state commerce. The latter is effectually excluded from the operation of the law, and is in no way affected by

it. That part of the business which may be inter-state is permitted to go on without let or hin-drance; no burden is laid upon it, nothing done to regulate or impede its free prosecution. Such legis-lation is valid, and not void. *Osborne* v. *Florida*, 164 U. S., 650; *Crutcher* v. *Kentucky*, 141 *Ib.*, 58; *Gibbons* v. *Ogden*, 9 Wheat., 195; *Osborne* v. *Flor-ida*, 33 Fla., 162 (S. C., 25 L. R. A., 120); *New Jersey* v. *Board of Assessors*, 55 N. J. Law, 529 (S. C., 25 L. R. A., 134). The unanimous opin-ion of the Court is that the legislation drawn in question is without conflict with any provision of the Constitution, State or Federal.

Let the decree dismissing the bill be affirmed.