COLE MANUFACTURING CO. *v.* FALLS.

(*Jackson.*    June 11, 1891.)

1. CONSTITUTIONAL LAW.    *General rules.*

Courts indulge every reasonable intendment favorable to the constitutionality of a statute passed with the required formalities.    If susceptible of two constructions, one that renders the statute constitutional will be preferred to another, though more natural, that renders it unconstitutional.    Statutes upon trial for unconstitutionality, are entitled to benefit of every reasonable doubt.

Cases cited and approved:  Morrell *v.* Fickle, 3 Lea, 81; Garvin *v.* State, 13 Lea, 162.

2. MECHANICS' LIEN.    *Acts 1889, Ch. 103, Sec. 1., constitutional.*

There is no valid objection, upon constitutional grounds, to Sec. 1, Ch. 103, Acts 1889, which provides for lien upon realty in favor of "every journeyman or other person" who furnishes labor or material to an original contractor, to be used in putting improvements upon such realty under contract between him and the owner.    The owner contracts with reference to the law which gives the lien for work and labor furnished to his contractor by journeymen and others.

Act construed:  Acts 1889, Ch. 103, Sec. 1.

3. SAME.    *Same.    Same.*

The provision of Section 1 of said Act allowing the "laborer, mechanic, or workman" thirty days "after the building is completed, or the contract of such laborer, mechanic, or workman shall expire, or he be discharged," in which to give the owner written notice that a lien is claimed for such labor and material as have been furnished the contractor, does not render the Act unconstitutional.    The owner may, by contract or indemnity bond, protect himself against double payment for such labor and material.

4. SAME.    *Same.    Construction of Section 1.*

This section (1) of said Act is not fairly susceptible of the construction that the owner may be held by laborers and material-men furnishing

Cole Manufacturing Co. *v.* Falls.

labor and material to the contractor for a greater sum than he agreed to pay the contractor. There is no express provision in the Act upon that subject. The former law had imposed the proper limitation upon the owner's liability.

Code cited: § 2748 (M. & V.); § 1988 (T. & S.).

5. SAME. *Acts 1889, Ch. 103, Sec. 2, constitutional.*

There is no valid objection, upon constitutional grounds, to Sec. 2, Ch. 103, Acts 1889, which, properly construed, authorizes every mechanic, laborer, and furnisher to take and remove, under the direction of a Court, after giving ten days notice to the owner of his·purpose to do so, all "such property or the parts of the same on which his labor was performed, or materials, machinery, or other property was used," at the request of a contractor for the owner's benefit, when such improvements have been made upon the lands of a married woman, or other persons under disability, or upon trust estates, or upon lands held by other superior title or subject to prior liens, and the mechanic, laborer, or furnisher was ignorant of the state of the title and the true owner refuses to recognize the lien or claim for the materials furnished or labor performed.

Act construed: Acts 1889, Ch. 103, Sec. 2.

6. SAME. *Acts 1889, Ch. 103, Sec. 3, constitutional.*

Sec. 3, Ch. 103, Acts 1889, permitting the owner who has been compelled to pay his contractor's employes in discharge of their lien on the property, to take judgment over against the contractor upon his indemnity bond upon mere motion, is valid and constitutional. Although notice to the contractor of this motion is not expressly provided for in the Act, it is required by necessary implication.

Acts construed: Acts 1889, Ch. 103, Sec. 3.

Case cited: Williams *v.* Nashville, 89 Tenn., 487.

7. SAME. *Same. Same.*

This provision of Section 3 of said Act does not constitute vicious class legislation.

Constitution construed: Art. XI., Sec. 8.

Cases cited and approved :· Parks *v.* Parks, 12 Heis., 633; Woodard *v.* Brien, 14 Lea, 520; Burkholtz *v.* State, 16 Lea, 71; Ragio *v.* State, 86 Tenn., 272; Davis *v.* State, 3 Lea, 380; Demoville *v.* Davidson County, 87 Tenn., 214.

Cole Manufacturing Co. *v.* Falls.

8. SAME.    *Title and subject of Act sufficient.*

    The title of said Act is sufficient, under the constitutional requirement, to cover all the foregoing provisions.    That title is as follows: "An Act to amend the mechanics' lien law, and to afford mechanics and material-men greater security for their work and material."

    Constitution construed: Art. II., Sec. 17.

    Case cited and approved: Cannon *v.* Mathes, 8 Heis., 504.

9. SAME.    *Same.    General rule.*

    "Where the title of a legislative Act expressed a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the Act, and are germane to its title."

    Constitution construed: Art. II., Sec. 17.

---

FROM  SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

JOHN D. MARTIN, J. E. R. RAY, and CASEY YOUNG for Cole Manufacturing Co.

BEARD & CLAPP and M. B. TREZEVANT for Falls.

CALWDELL, J.    This is a material-man's bill, brought to enforce an alleged lien for materials furnished by complainant to Rempe, and by him used in the construction of a building for Falls. The action is founded on Chapter 103, Acts of

1889, and can be maintained, if at all, alone under that statute. The constitutionality of the Act is called in question by demurrer. The demurrer was overruled, and appeal taken by special leave of the Chancellor.

The Act, as a whole and in each of its sections, is impeached, as in conflict with the organic law, and, therefore, null and void. This makes a consideration of all its provisions necessary. For convenience the different sections will be considered *seriatim* first, and after that the Act will be considered as a whole.

It is well to observe in the outset that all intendments are in favor of the constitutionality of an Act of the Legislature, passed with the forms and ceremonies requisite to give it the force of law; and that, where one construction will make a statute void on account of conflict with the Constitution, and another would render it valid, the latter will be adopted by the Courts, even though the former, at first view, be otherwise the more natural interpretation of the language used.

Every reasonable doubt must be solved in favor of the legislative action. Sutherland on Statutory Construction, Sec. 332; Cooley's Const. Lim. (5th Ed.), p. 218; 3 Am. & Eng. Ency. of Law, 673, 674; *Morrell* v. *Fickle*, 3 Lea, 81; *Garvin* v. *State*, 13 Lea, 162.

The first section is as follows: "That Section 2 of the Act of the Legislature of 1881, Chapter 67, above referred to in this caption, shall be amended

so as to read as follows, viz.: 'Every journeyman, or other person, employed by such mechanic, founder, or machinist to work on the buildings, fixtures, machinery, or improvements, or to furnish material for the same, shall have this lien for his work or material; *Provided,* That within thirty days after the building is completed, or the contract of such laborer, mechanic, or workman shall expire, or he be discharged, he or they shall notify, in writing, the owner of the property on which the building or improvement is being made, or his agent or attorney, if he reside out of the county, that said lien is claimed, and said lien shall continue for the space of ninety days from the date of said notice in favor of such subcontractor, mechanic, or laborer, and the same shall have precedence over all other liens for such time; *Provided,* A statement of the amount due for such work, labor, or materials shall be filed with the County Register, who shall note the same for registration, and put it on record in the trust book in his office, for which he shall have fifty cents, and also twenty-five cents for registering the affidavit to the same, which shall be paid by the party filing the same, but said fee shall be receipted for on the statement of account, and shall be charged as part of the cost, and this registration shall be notice to all persons of the existence of such lien.' "

This section gives all subcontractors and materialmen ("every journeyman or other person") employed

by the original contractor ("such mechanic, founder, or machinist") to work or furnish material, a lien for their work or material, on the two conditions mentioned respectively in the two provisos. The original contractor is the person who has undertaken the work of construction, erection, etc., "by special contract with the owner or his agent," as prescribed by § 1981 of the Code of 1858.

By § 1986 of that Code the same lien was given to the same classes of persons, on condition that notice, in writing, of an intention to claim it be communicated to the owner of the property at the time of beginning to work or furnish materials. That section was amended by the Act of 1881, Chapter 67, Section 2, so as to give the lien if such written notice be served on the owner during the progress of the work, or after its completion, if before the contractor has been paid—the amount of such lien not to exceed the amount due, or to become due, to the original contractor.

Section 1986 of the Code, as thus amended by the Act of 1881, is the statute amended and superseded by the first section of the Act of 1889, which has just been quoted in full.

Thus it is seen that the same idea of protection and compensation to the subcontractor and material-man has found expression, in one form or another, in successive Acts since 1845, when the said section (1986) was first enacted. It cannot, therefore, be said that the scheme is either novel or without recurring legislative indorsement in this State.

The lien given by the Act of 1845 has been enforced by this Court in many cases without the expression of even a doubt as to the constitutionality of the enactment; and there is as little room for doubt with respect to the validity of the amendatory Act of 1881.

The corresponding provision of the Act of 1889 is assailed, upon the assumption (1) that it undertakes to appropriate the property of the owner for the benefit of a person with whom he has made no contract; (2) that this result may be accomplished, though the owner have no notice of the claim until after he has paid the original contractor in full; and (3) that the aggregate of the claims of subcontractors and material-men may exceed the amount agreed to be paid the original contractor, in which case the owner will be compelled to pay more than the contract price for the advantages received.

The provision is not fairly subject to all of these animadversions, and such of them as are well made do not render it obnoxious to the Constitution.

It is true that a lien is provided for persons with whom the owner is supposed to have no direct contractual relations, but that fact alone does not invalidate the Act; for the owner must be held to a knowledge of the existing law on the subject, and to the presumption that he employed the original contractor and gave out his work with reference to that law. The right of lien to

subcontractors and material-men is, by operation of law, incorporated into and made a part of the owner's contract as much as if expressly included and written therein. He contracts about a subject in which the law declares certain advantages to all persons concerned, whether by direct contract with him or by the employment of his contractor. The law declares that a lien shall exist in favor of the subcontractor and material-man in certain contingencies; hence, the owner who makes the contemplated contract cannot justly complain of the legal result, especially when he receives the benefit of the labor and material of those for whom the lien is provided, and who often have no other means of compensation. The enforcement of this' law does not necessarily result in loss to the owner, nor take from him something for nothing.

The second criticism, involving the proposition that the owner *may* be compelled to pay the subcontractor and material-man after he has already paid the original contractor, is true literally; but it is not true in the sense that it ascribes to the statute a *purpose* of enforcing double payment. In other words, it is a fact that an owner who pays the original contractor within thirty days after the completion of the work, building, or machinery may, upon notice given within that period, be forced to pay the subcontractor and material-man whom the original contractor unjustly fails or refuses to pay; but double payment does not follow as a necessary legal consequence in any case.

In every instance the owner may fully protect himself by withholding the whole or a sufficiency of the price agreed upon from the original contractor until after the expiration of the thirty days, or he may see to it that the subcontractor and material-man are paid as the work progresses, or he may indemnify himself by bond, as prescribed in the third section of this Act.

It may be truthfully said that it will be inconvenient for the owner to adopt any one of these expedients, yet inconvenience of parties affected is never allowed to defeat a statute. The constitutionality of an Act of the Legislature cannot be successfully impeached upon the ground that it involves the citizen in mere inconvenience. Much more than inconvenience is involved for the subcontractor and material-man. Without the protection of such a law, they would be constantly exposed to the danger of an entire loss of labor and material. Hence, as a matter of pure wisdom and justice, there could be but little difficulty in choosing between the situation with such a law and that which would exist without it. A policy that would involve one class of citizens in mere inconvenience for the pecuniary safety of another class is far more wise and just than that which would suffer loss to the latter class rather than entail inconvenience on the former.

The other objection, that subcontractors and material-men are given liens for the aggregate of their claims, though in excess of the price agreed

upon by the owner and original contractor, is not well taken.

The Act is entirely silent upon that subject. It places no limit upon the amount of liens that sub-contractors and material-men may fasten upon the owner's property. What the effect of this silence and the generality of the language used would be if there were no other legislation on the subject need not be decided. The fact is that, by the second proviso of Section 2, Chapter 118, Acts of 1845, a limitation was expressly made in the following words: "The claims thus secured by lien for work and labor done and materials furnished, shall in no case exceed the amount agreed to be paid by the owner or proprietor in his original contract with the undertaker." This provision was carried into the Code of 1858 at § 1988, and is now in full force and effect, never having been repealed expressly or by implication.

We find no valid constitutional objection to the first section of the present Act. *It does not provide for or allow the taking of property without due process of law, or the law of the land;* and, hence, is not in violation either of Section 1 of the Fourteenth Amendment to the Constitution of the United States, or of Section 8 of Article II. of the Constitution of Tennessee.

Statutes similar to the provision made in the first section of our Act of 1889 have been upheld and approved by the Supreme Court of the United States, and by the Courts of last resort in most

of the States of the Union. In a very small minority of the States has the validity of such legislation been denied by the Courts. In some instances the provision for the subcontractor and material-man is less, and in others more burdensome on the owner than in our law.

Mr. Jones, in his work on liens, says: "The constitutional validity of such statutes securing liens to subcontractors, and others furnishing labor or material to a contractor, irrespective of the state of the account between the owner and the contractor, is well established; and it is established upon the ground that such statutes annex the lien as an incident to the contract of the owner with the contractor, such contract being the evidence of the authority of the contractor to charge the owner's property with liabilities incurred by him in performing his contract." Jones on Liens, Sec. 1304.

It is not necessary for us to discuss, or even mention, in detail the numerous cases on this subject. What has been said above with respect to them is sufficient for the purposes of this opinion.

The next section is as follows:

"SEC. 2. *Be it further enacted*, That Section 1 of the Act of the Legislature of 1881, Chapter 67, above referred to in the caption of this Act, shall be amended so as to provide that if the work or improvement or materials be furnished for work done on the lands of any married woman who has not signed the contract or agreement in writing, as pro-

vided in said Section 1 of the Act of 1881, Chapter 67, and in ignorance on the part of said mechanic, laborer, or furnisher of her right or claim, and if said married woman shall refuse to recognize or agree to said lien, said mechanic, laborer, or furnisher shall have the right, after giving ten days' notice, to take and remove such property, or the parts of the same on which his labor was performed, or materials, machinery, or other property was used; *And provided further,* The right of removal shall apply to all other cases of parties under disability, whether as minors, persons of unsound mind, or *cestui que trusts,* or in other cases of superior titles or liens, when the work was done by the laborer or mechanic in ignorance of the rights of such parties; and said right of removal shall be extended to any repairs or improvements ordered by the tenant or occupier, when the owner of the leased or rented premises declines to pay therefor, the same to be removed without injury to the property originally leased or rented; *Provided,* That the Courts of Law or Equity in this State shall have jurisdiction to hear and determine, and to enforce such liens on the property of persons in the cases aforesaid, care being had to protect the rights of such parties as well as mechanics, furnishers, and laborers aforesaid."

Though not happily expressed, we find here a provision that a mechanic, laborer, or furnisher who has done work or furnished materials for the improvement of a married woman's land, without

a legal contract with her, and in ignorance of her
right or claim, shall have the right, upon notice
given, to take and remove the improvement, or
such parts of it as were made by his labor, or
from his materials, etc., unless she will agree by
legal contract to bind her property therefor; and
the same right of removal is extended to the
enumerated cases in which repairs or improvements
have been placed upon the lands of other persons
under disability, or in which other persons have
superior titles or liens, by mechanic, laborer, or
furnisher in ignorance of such disability or superior
rights; and also to cases in which the tenant, or
other person in possession of the property, has
procured repairs or improvements to be made upon
it, for which the owner declines to pay; provided,
that in each and every case the removal shall
be made without injury to the property, and in
the exercise of due care for the protection of the
rights of all such owners of the land and interests
therein, as well as of the mechanics, laborers, and
furnishers aforesaid, and then *only* by the authority
and in pursuance of the judgment or decree of
some Court of Law or Equity having jurisdiction
of the same.

With such a construction of this section (and
we think it the most natural one of which the
whole language will admit) it cannot be unconstitutional.

Besides being valid, it seems to us to be entirely just and reasonable. Certainly there can be

no fair legal or moral objection to the removal of improvements or repairs placed upon the land, of another in good faith, when it is discovered that the land is not bound therefor, and that the owner or other person concerned either cannot or will not bind it or make payment; provided always that the property be left in no worse condition than it was originally, or than it would be but for the labor or materials of the party in whose behalf the removal is made.

The person seeking the removal can no more have the relief to the prejudice of other mechanics, laborers, or furnishers than he can have it to the injury of the property or its owner; nor can he take away or impair the benefits of such materials or work as may have been paid for or contributed by others.

The purpose of this section, as we construe it, is to enable the mistaken mechanic, laborer, or furnisher to repair his loss and re-imburse himself for his outlay of labor, materials, etc., so far as he may do so without injury or injustice to others.

It cannot be that the Legislature intended to authorize the mechanic, laborer, or furnisher to make the removal himself, at will and in any manner that to him may seem best, without the judgment or decree of any Court, and without reference to the injury which might result to the owner or other persons concerned. Such a construction as that would unquestionably render the section unconstitutional and void.

The only other section to be considered is in these words:

"Sec. 3. *Be it further enacted,* That the owner of the property on which the improvement is made shall have the right to demand from the original contractor an indemnity or refunding bond, to protect him in case of the enforcement of this lien by such subcontractors, mechanics, or furnishers; and in the event such contractor is paid for the work done, or any part of it covered by the foregoing sections, and on payment to such subcontractors, mechanics, or furnishers of the amount due, he shall have judgment for such amount by motion on such bond in any Court having jurisdiction in such cases; *Provided,* That the contractor shall have the right to contest the legality of the claim of such mechanics or furnishers employed by him before he is made liable."

This provision is intended primarily for the benefit of the owner, and, secondarily, for the advantage of the subcontractor and material-man, referred to in the first section. It points out a method by which the owner may protect himself against double payment; and, in that view, renders the provision of the first section the more reasonable. He would have had the right to require such a bond without the third section, and, to that extent, this section is but declarative of a legal right already existing.

The owner is not *required,* but *permitted,* to exact the bond; and if he choose to take it, a speedy remedy is provided for its enforcement.

It .is objected that this remedy is by *motion* instead of by the usual *summons* or *subpœna.* That is no ground upon which the *validity* of the provision can be impeached. At most it was but a question of policy, and of that the Legislature was the exclusive judge. The Courts have nothing to do with the mere policy of legislation. *Williams* v. *Nashville,* 5 Pickle, 487.

Our Code provides for the commencement of numerous actions by motion; and it has never been held that such provisions are void on that account.

We do not think it can be fairly assumed that the Legislature intended that the right of motion on the bond should, or could, be exercised without notice to the obligor, or that he should be made liable without his day in Court. Certainly no such purpose is expressed; nor does the silence of the Act with respect to notice justify the assumption.

If nothing appeared but the mere grant of a right to judgment on motion, the Courts would require notice, as in other cases where a like remedy is given. But, in reality, the proviso "that the contractor shall have the right to contest the legality of the claim of such mechanic or furnishers employed by him before he is made liable," shows affirmatively and conclusively that it was contemplated that he should have notice of the motion, and an opportunity to make defense.

Nor is the grant of this remedy by motion in violation of Section 8, Article XI., of the Constitution, which forbids partial or class legislation.

31—6 p

Every citizen in the State may bring himself within its operation by contracting for the erection of a house, which most men do in the course of a life-time.

Whether a given law may be extended to any member of the community who may be able to bring himself within its provisions, is the correct criterion, by which the Courts are to determine its validity or invalidity, under that section of the Constitution. *Parks* v. *Parks*, 12 Heis., 633; *Woodard* v. *Brien*, 14 Lea, 520; *Burkholtz* v. *State*, 16 Lea, 71; *Ragio* v. *State*, 2 Pickle, 272; *Davis* v. *State*, 3 Lea, 380; *Demoville* v. *Davidson County*, 3 Pickle, 214.

After a very careful consideration of all the sections of the Act, we have no hesitation in holding them to be constitutional and valid.

The impeachment of the Act as a whole is based upon the contention that it violates Section 17, Article II., of the Constitution, which declares that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

Both of these clauses are mandatory, and whether the bill embrace more than one subject, or that subject be not expressed in the title, it is equally unconstitutional and void. *Cannon* v. *Mathes*, 8 Heis., 504.

The insistence is that the present Act is subject to both objections; that it violates both clauses.

The title of the Act is as follows: "An Act to

amend the Act of 1881, Chapter 67, pamphlet. Acts, page 79, entitled 'An Act to amend the mechanics' lien law, and to afford mechanics and material-men greater security for their work and material.' Said Act passed April 2, 1881, approved by the Governor April 4, 1881."

The object of the Act is *to afford mechanics and material-men greater security for their work and material.* This embraces but one subject, and that subject is plainly expressed in the title; and we think that the body of the Act is no broader in its subject than the title; that each of the three sections is fairly within the scope of the title, and embraced in the one subject.

Confessedly, the first and second sections are strictly within the subject expressed in the title, and the third section is germane to it. The first gives a lien on certain conditions, the second gives a right of removal on certain other conditions; the manifest object in each case being to afford greater security to mechanics and material-men for their work and material.

In affording this greater security, the first section places the owner in such a position that he may be subjected to double payment, unless he exercise reasonable care and caution to prevent it. As a part of the scheme, and the more clearly to justify the provision of the first section, the third section gives the owner a corresponding advantage. Any lien given on the owner's property vitally concerns him of course; hence, any title that will authorize

legislation concerning such lien, will also embrace a provision for his protection against loss in consequence of that lien. To give the owner such protection is the purpose of the third section. Therefore, the third section is germane to the subject expressed in the title of the Act.

The remedies prescribed in the different sections for the enforcement of the rights conferred, cannot be separated from the rights themselves, and thereby resolved into different *subjects* of legislation. The remedies are but incidents to the rights, and are embraced in the same general subject.

Says a learned author: "Where the title of a legislative Act expressed a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the Act, and are germane to its title." Sutherland on Statutory Construction, Sec. 93.

The Act in question, in each of its parts and as a whole, is constitutional and valid.

Let the decree be affirmed, and the cause remanded for further proceedings.