## STATE v. HAYES.

(*Nashville*.  December Term, 1905.)

1.  **CONSTITUTIONAL LAW.**  A valid statute can embrace only the one subject, expressed in its title.

The constitutional requirement that statutes shall embrace but one subject, that subject to be expressed in the title, is mandatory, and while it should be liberally construed and the statute is entitled to every reasonable intendment in its favor, nevertheless the courts are not clothed with dispensing or enlarging power, and the subject-matter of the body of the act must be restricted to the single, though narrow, subject stated in the title.  (*Post, pp.* 42-44.)

Constitution cited and construed:   Art. 2, sec. 17.

Statute cited and construed:   Acts of 1905, ch. 82.

Cases cited and approved:   Cannon v. Mathes, 8 Heisk., 504; State v. Lasater, 9 Baxt., 584; State, ex rel. Morrell, v. Fickle, 3 Lea, 79; Luehrman v. Taxing District, 2 Lea, 427; State v. McConnell, 3 Lea, 332; State, ex rel., v. Schlitz Brewing Co., 104 Tenn., 718; Cole Mfg. Co. v. Falls, 90 Tenn., 466; Hyman v. State, 87 Tenn., 112.

2.  **SAME.**  Same.  Additional non-severable subject in body of statute vitiates the whole.

Where in the body of a statute, there are different subjects which go beyond the title and are so intermingled that it would be impossible to dissever them without destroying the statute, the whole act is void.  (*Post, p.* 50.)

3.  **SAME.**  Same.  Case in judgment.

Defendant was indicted for violating the statute (Acts of 1905, chapter 82) entitled, "An Act to prohibit gambling on races," which made it unlawful to make *any bet* or *wager*, not only (sec. 1) upon the result of any trial or test of skill, speed or

State v. Hayes.

power of endurance of man or beast, but also (sec. 2) by any means, method or known contrivance. From the judgment of the court below quashing the indictment on the ground that the statute was unconstitutional, the State appealed.

*Held*: 1. The subject expressed in the title is restricted to prohibiting gambling on races. 2. The term "races," as used in the title, embraces only tests or trials involving progression, including either speed or endurance, or both; 3. Both sections of the statute, supra, include subjects beyond the subject expressed in the title, and it being impossible to dissever them without destroying the statute, the whole act is void.

### FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson County.—W. M. HART, Judge.

ATTORNEY-GENERAL CATES, for the State.

VERTREES & VERTREES, J. M. ANDERSON, K. T. MC-CONNICO and E. E. WRIGHT, for Hayes.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This case involves a question as to the constitutionality of chapter 82, p. 185, of the Session Acts of 1905 of the general assembly of Tennessee. The judge of the criminal court of Davidson county, holding the act to be unconstitutional, quashed an indictment found under

it against the defendant in error, in which he was charged with making a book upon the result of a horse race run on the 30th of December, 1905, in the county of Davidson, upon a duly licensed race track inclosed by a substantial fence, which track was owned and operated, for the purpose of racing horses, by a corporation known as the "Tennessee Breeders' Association." The only question, therefore, presented on this record, is as to the soundness of this holding.

The provision of the constitution which it is insisted for the defendant in error this act contravenes is a part of section 17 of article 2 of the state constitution, which is in the following words: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The purpose of this provision has been so frequently stated by the court, and is so well understood by the profession, that it would now be an idle service to do more than refer to it in the most general terms.

Prior to the constitution of 1870 there had been great abuse of legislation in Tennessee. The practice prevailed of preparing omnibus bills, in which were combined the most incongruous subjects, with a view of enlisting for their passage as many legislators as were interested in the several subjects, and thus by a combined effort secure the enactment of a bill as a whole, when no one of the subjects so embraced, if left to its own merits, would have been able to secure the favorable consideration of the legislature. This practice was

found deleterious in its effect upon legislators, and often harmful to the State. In addition, experience had shown that many times objectionable clauses were, by astute and interested members, craftily introduced into, pending bills of which no intimation was given by the title, and which thus, practically concealed, passed undiscovered through the legislative body, the greater part of whose members were aware of their existence or effect. Fraught as this practice was with many evils, it was the purpose of the framers of the constitution in this provision to eradicate it. *Cannon* v. *Mathes,* 8 Heisk., 504; *State* v. *Lasater,* 9 Baxt., 584.

While, however, it has been uniformly held that this provision is mandatory, and should be enforced by the courts so as to accomplish the purpose to which it was addressed, yet it has often been announced that it should be liberally construed so as not unnecessarily to embarrass the legislature in the enactment of wholesome laws: *State, ex rel. Morrell,* v. *Fickle,* 3 Lea, 79; *Luehrman* v. *Taxing District,* 2 Lea, 427; *State* v. *McConnell,* 3 Lea, 332.

It has been further held by this court, and by frequent adjudication has become a canon of construction, that a statute passed with due form and ceremony, when challenged for unconstitutionality, was entitled to the benefit of every reasonable doubt, so that, if it is susceptible of two meanings, that one will be adopted which reconciles it with the constitution, rather than another which brings it in conflict with that instrument. *State, ex rel.,*

v. *Schlitz Brewing Co.,* 104 Tenn., 718, 59 S. W., 1033, 78 Am. St. Rep., 941; *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 466, 16 S. W., 1045.

At the same time these rules of construction have been maintained, it has been the holding of the court, from the time that controversy was raised over this constitutional provision, that a statute which was in flagrant disregard of it, however beneficent its effect, must be declared inoperative and void. The reports of this court abound with cases illustrating this principle.

Coming now to the examination of this statute, in view of these rules of construction and the former adjudications of this court, we find it entitled as follows: "A bill to be entitled 'An act to prohibit gambling on races.' " While it is a part of public history of this legislation that its chief, if not only, purpose was by making it a misdemeanor to prohibit gambling on horse races, yet this caption does not so limit it, but its terms are broad enough to embrace gambling on all forms and methods of racing.

What, then, is a race within the meaning of this title? Evidently the word was not used in a generic sense, so as to include many different things or subjects to which it is applied figuratively or otherwise, as the "human race," the "race for life," and like expressions. The term was used by the framer of the statute to accomplish a practical purpose and in a popular and well-defined sense; that is, in a sense which involves the idea of competitive locomotion. In other words, it here em-

State v. Hayes.

braces every contest or trial of progression, including speed and endurance, one or both, whether in running, trotting, walking, driving, riding, sailing, rowing, etc. It therefore includes a foot race, a horse race of any knid an automobile race, a steamboat or yacht race, or any other form of competitive movement or progression. It is against gambling on races such as these that the caption indicated to the legislature and to the public that the statute was directed.

So it is that, while many forms of gambling exist, all of which are evil in effect, yet this title gives notice that the act proposes to deal alone with one of these forms of vice. It carves out from the whole body of gambling that of gambling on races, and indicates that the act will provide alone for its punishment. In this sense it is a statute with a narrow or restricted title. As to such a title it has been uniformly adjudged that courts are clothed with no dispensing or enlarging power, and the statute of which it is the title must fall within its limits, however narrow they may be. To this effect are *Hyman* v. *State,* 87 Tenn., 112, 9 S. W., 372, 1 L. R. A., 497; *State* v. *Schlitz Brewing Co.,* supra.

We think it will be found, on an analysis of this statute, that it covers matters differing in character and degree, and that its enacting parts pass much beyond the limits of the title. The first section provides as follows: "Be it enacted by the general assembly of the State of Tennessee, that it shall be unlawful for any person to record or register, by mechanical or other

means, bets or wagers, or sell auction pools, or French mutual pools, or engage in any book making by or through any device, book, instrument or contrivance upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, which is to take place within or beyond the limits of this State." Laws 1905, p. 185, c. 82.

In this section is embraced for condemnation, gambling on trials or contests "of skill," or "of endurance," and "of speed" of "man or beast." While every contest of speed and some contests of endurance between animals would fall within the meaning of the title, there are many contests of endurance which would not. For instance, a race for a short distance between horses would be a test of speed, while one for a much longer distance would largely, if not altogether so, be one of endurance, yet gambling on either would be within the title to this act. It is true that, in addition to the power of speed or endurance of the animals engaged in such races, the skill of the jockeys who ride or drive them might be a matter to be reckoned with; but, after all, it is the respective powers of the animals engaged which characterize the contest as a race and determine the result. It is equally true as to an automobile race, a steamboat race, a yachting race, and as to a running race between individuals, in all of which speed is a principal factor, coupled in the last with endurance, that skill in some degree is an element. In an automobile race there is the skill of the chauffeur, and in the steamboat race

that of the pilot; but in each this is an incident. On the other hand, there are many contests of endurance and skill into which speed does not enter. A game of football or of baseball requires for successful play skill and physical endurance, and yet no one would designate either as a race. A wrestling match, a boxing match, and a prize fight are forms of popular amusement upon which wagers are placed. They are contests requiring skill, endurance, and courage, but are in no sense races. So a shooting match, a competitive drill between military or fire companies, a game of chess or whist, an oratorical contest between the student representatives of different universities, requires skill; but it would be going far to hold that either of these was in any sense of the term a race.

The list of competitive efforts among men, all being contests of skill and many of physical endurance as well, might be indefinitely extended, no one of which involves speed, or would for a moment be regarded as a race, yet all, with those mentioned, while without the title of this act are within the terms of inhibitions of the first section.

But it is insisted for the State that the meaning of the word "race" has been greatly broadened by popular use, and that it is now applied to a competitive action of any kind. As an illustration of this it is said we are in the habit of speaking of a contest for public office as a "political race." It has already been conceded in this opinion that the term has been applied, figuratively

or otherwise, to many other matters than a contest of men or beasts in locomotion, yet we think it cannot be successfully maintained, giving it the widest latitude established by such use, that it includes many forms of competitive physical trials or contests, none of which involve the element of speed, and quite as many intellectual contests of which neither speed nor power of endurance is a factor. Nor can it for a moment be supposed, in view of the history of this measure, that the legislature ever contemplated that the term "races," as used in the caption, included anything else than the form of sport which in all periods of history and in every country has been and is regarded as one particularly tempting to the placing of wagers or bets, though, as it has been seen, it is broad enough to include much more than this.

It is further said for the State that the lexicographers give, as a secondary definition of the word "game," that it is "a contest, physical or mental, for amusement, recreation, or for winning a stake," and used in this sense, it is equivalent of the word "race." In other words the argument is that in this sense a "race" is a "game," and it may therefore, as found in the caption of this act, be held to cover all the forms of sport embraced in its first section.

While, under the canon of construction already referred to, every doubt shall be resolved in favor of the constitutionality of a particular act, yet, if this insistence should be maintained, we think the holding

would astound the profession. If the title had been one to prohibit games or gaming there would be no difficulty in yielding to the argument; but it is not. As it is, to bring the various contests embraced in the first section of the act within the title would be straining this rule of construction beyond all proper limits. Whatever may be the wisdom or necessity of the legislation, we do not feel that the court is called upon to abandon well-recognized principles in order to sustain it.

The second section of this act we regard as a more radical departure from the title than the one we have just been considering. It is in these words: "Be it enacted, that any person who shall bet or wager by or through the sale or purchase of auction pools, French mutual pools, or in any book, or by or through any device, instrument, or contrivance, and any person who shall sell auction pools, French mutual pools, or engage in any book making by any known contrivance, shall be guilty of gaming." Laws 1905, p. 185, c. 82.

It will be seen that the legislature is undertaking to define those offenses which are made a misdemeanor by the first section. In a word, it defines gaming within the sense of the statute. This definition is not confined to the matter of betting or wagering on races, but extends to every bet or wager made by or through the instrumentalities therein described, whatever may be the subject of the bet or wager. We are satisfied that neither a member of the legislative body who heard the

116 Tenn.—4

State v. Hayes.

title of this act announced, nor the public reading the title, would ever suspect that within its operation, by one of the succeeding sections, all forms of gaming were to be combined.

We think that, in the body of the act, there are different subjects so intermingled that it would be impossible to dissever them without destroying the statute, and that by its terms it goes far beyond the notice of its contents given by the caption, and that the whole act must fall because passed in violation of the provision in our constitution, which has already been set out in this opinion. The judgment of the lower court is therefore affirmed.