STATE OF TENNESSEE, etc., ex rel. W. J. COLE, Appellees,

*v.*

CITY OF HENDERSONVILLE et al., Appellants.

445 S.W.2d 652

(*Nashville,* December Term, 1968.)

Opinion filed May 23, 1969.

Opinion on Petition to Rehear Denied July 25, 1969.

J. DENNIS SANDERS, Hendersonville, and E. C. YOKLEY, Nashville, for appellants.

HARSH, KELLY, & HARSH, Gallatin, for appellees.

Mr. Justice Creson delivered the opinion of the Court.

Appellants, City of Hendersonville, et al., appeal to this Court from a decree of the Chancery Court of Sumner County, which overruled motions to dissolve a temporary injunction and to dismiss an original bill in the nature of quo warranto filed in the name of the State on relation of W. J. Cole.

In October, 1967, thirty-nine voters and residents of an area, described as the City of Hendersonville, petitioned the Election Commission of Sumner County to hold an election to decide whether the area would be incorporated under the provisions of T.C.A. sec. 6-1801 et seq.

The area so sought to be incorporated comprises eighteen one-hundreds of a square mile, and lies along

U.S. Highway 31-E, near Old Hickory Lake, between the cities of Nashville and Gallatin, Tennessee. The area has a population of 251, of which sixty-two were registered voters at the time of filing of the election petition.

The election to decide the question of incorporation was held June 11, 1968. Fifty-three residents voted for incorporation, and twenty-six residents voted against it. On July 9, 1968, in a second ballot, L. W. Oliver, Sr., W. E. Sisco and L. H. Newman were elected Commissioners of the City of Hendersonville.

The bill in the nature of quo warranto, filed July 18, 1968, attacked the legality of the incorporation of Hendersonville. The bill averred (1) that the area incorporated was merely a tiny portion of a large unincorporated and densely populated area generally known as "Hendersonville," (2) that the area so incorporated is not distinct from the larger "Hendersonville" area, nor set off from it "by natural * * * economic or social boundaries," and (3) that the incorporation of the area was not within the "meaning, intent or authority of Chapter 18 of Tennessee Code Annotated."

As noted above, appellants moved to dissolve a temporary injunction granted, and to dismiss the cause. The Chancellor overruled the motions and granted an appeal.

In a memorandum opinion, the Chancellor found the intent of the Legislature in enacting T.C.A. sec. 6-1801 et seq. to be the providing of an orderly and peaceful solution to the complicated problems of thickly populated but unincorporated areas; and that incorporation of a small portion of a thickly populated area does not conform to the legislative intent.

Appellants have filed twelve assignments of error, which were grouped into three classifications in appellants' brief and in arguments before this Court. These three argument divisions present the propositions (1) that the Chancellor erred in holding that the original bill filed by the appellees alleged facts which would render the election for incorporation void and justified a holding of the invalidity of the election for incorporation of June 11, 1968; (2) that the Chancellor erred in holding that the physical size of the area sought to be incorporated was too small, and that a larger territory should have been included, and (3) that the Chancellor erred "in construing the validity of the petition for incorporation * * * on the basis of anticipated fears of possible consequences to a larger community not encompassed within the territory" proposed to be incorporated.

The averments of the original bill, the memorandum opinion of the trial court, and the assignments of error reflect that this case turns upon solution of the question whether or not the physical size of the area sought to be incorporated is so small as to be in nonconformity with the intent of the statute authorizing incorporation as expressed by its terms.

While the memorandum opinion of the Chancellor reflects considerable research and mature reflection, we are constrained to disagree in some essentials.

Those sections of Chapter 18 of Title 6, under which incorporation was sought, provide as follows:

"6-1803. *Right to adopt city-manager form—Incorporation within specified distances from existing municipalities.*—The residents of any incorporated municipality or of any territory which it is desired to

incorporate shall have the right to adopt the provisions of chapters 18 to 23, inclusive, of this title in manner herein provided; and thereupon such city or territory shall be and become incorporated and be governed as herein set forth. No unincorporated territory shall be incorporated under the provisions of chapters 18 to 23, inclusive, of this title unless such territory contains not less than two hundred (200) persons, who shall be actual residents of the territory, and shall also contain real estate included in said territory worth not less than five thousand dollars ($5,000). Provided, however, that if any part of unincorporated territory proposed for incorporation is within five (5) miles of an existing city of one hundred thousand (100,000) or more in population or within two (2) miles of an existing city of five thousand (5,000) and less than one hundred thousand (100,000) in population, according to the latest census used for distributing state-shared taxes, then action on the petition as provided in secs. 6-1804, 6-1805 shall be held in abeyance for fifteen (15) months from the date of filing the petition; if within this period such existing city does not annex at least twenty per cent (20%) of the land area or thirty-five per cent (35%) of the population of such territory proposed for incorporation, then proceedings shall be continued as provided in secs. 6-1804, 6-1805 as though the petition had been filed at the conclusion of such fifteen (15) month period; if such existing city annexes at least said part of such territory within this period, then the petition shall be null and void and of no effect whatsoever.''

''6-1804. *Election to adopt city manager form.*—An election for the purpose of determining whether or not

chapters 18 to 23, inclusive, of this title shall become effective for any city shall be called by the county commissioners of elections of the county, upon the request or petition in writing of twenty per cent (20%) of the legal voters of such city or territory, voting at the last general election, which petition shall state therein the proposed corporate name and shall designate therein in a sufficient manner the boundaries of the proposed municipal corporation, which may be done by a general reference to the boundaries then existing if there be one. * * *"

Close scrutiny of Chapters 18 to 23 of Title 6 reveals that the Legislature was concerned with the form and function of the municipal government to be created and with the requisites for incorporation of unincorporated territories. T.C.A. sec. 6-1803 permits any incorporated municipality or unincorporated territory to adopt these provisions; however, a number of restrictions are imposed in the case of an unincorporated territory. Incorporation is not authorized unless the territory to be incorporated contains not less than two hundred persons and real estate worth not less than $5,000. Further, where the two foregoing restrictions are met, T.C.A. sec. 6-1803 provides for a delay of fifteen months from the filing of the election petition provided for in T.C.A. sec. 6-1804, where the territory to be incorporated is within five miles of an existing city of a population of 100,000 or more, or within two miles of an existing city having a population between 5,000 and 100,000.

It thus seems plain that the Legislature considered the problem of a number of comparatively minute municipalities within a larger densely populated area having at least many common interests and concerns. However, it

is not to be presumed that such awareness on the part of the Legislature overrides express provisions of the statute as enacted.

The facts of this case appearing in the record and set out above show that incorporation of the City of Hendersonville was undertaken with meticulous regard for the requirements of T.C.A. secs. 6-1803 and 6-1804. The percentage of voters of the area to be incorporated petitioning for election, the population of the area, and the value of the property in the area in the instant case all met the requirements established by the Legislature for incorporation.

It is quite clear that the Legislature has not established a condition as to the physical size of a territory to be incorporated. Parenthetically, it must be noted that legislative establishment of low minimal limit of (1) population, and (2) property values, leads only to the conclusion that small areas were a part of legislative contemplation. This consideration, when examined in connection with the statutorily imposed delay where proximity to an already existing municipality is a factor, supports the view that the Legislature foresaw incorporation of geographically small cities and acted to retard their creation where such tiny municipalities might impede the orderly development of larger pre-existing municipalities.

Those portions of T.C.A. sec. 6-1803 which provide for abatement of action on the election petition manifest legislative awareness of the problems just above mentioned and noted by the trial court in its memorandum opinion.

It is the insistence of the appellees that the area sought to be incorporated is territorially too small, and that

incorporation of such minute areas is not within the "meaning, intent or authority" of T.C.A. sec. 6-1801 et seq. The trial court, after extended consideration of T.C.A. secs 6-1801 et seq. has agreed with this insistence.

The foregoing discussion of the facts of this case as they appear in the instant record, and the statutes here involved, indicate that the present proposed incorporation does conform to the express language of the Legislature. While the language of these statutes exhibits legislative awareness of the problems created when relatively small communities in the general area of larger unincorporated communities seek incorporation, there is no manifestation of an intent to prohibit incorporation of small communities for that reason alone.

If the criticism of the appellees can boast any validity, the fault they find is the failure of the legislation to fix any requirement as to size other than (1) population, and (2) property values.

Courts do not exercise arbitrary powers in construing statutes or constitutions. *Henley v. State* (1897), 98 Tenn. 665, 41 S.W. 352, 1104, 39 L.R.A. 126. It becomes apparent that the basic thrust of what is said by the learned Chancellor below and argued here by the appellees is precisely that which the discussion by Mr. Justice Wilkes so ably elucidates, as follows:

"With the wisdom, propriety, desirability, and policy of the act, this court can have nothing to do. These are matters which appeal to the intelligence, patriotism, and discretion of the general assembly, and upon that department of the government rests the responsibility for the wisdom and sound public policy of the law. That body is composed of representatives fresh from and

charged by the people with the duty of providing such legislation as will correct the abuses of the body politic, and at the same time provide wise measures for the benefit of the state. These representatives are, or should be, in touch with the people; should know their wishes, their burdens, their plans for relief; and this, Court in passing upon an act designed to affect the whole people, and to correct what is said to be a great public evil, can question the act only so far as it touches the fundamental law, and measure it by the provisions of that law, and determine whether it has in any particular passed the limits placed upon the power and discretion of the legislature by the constitution.

Mr. Cooley, in his work on Constitutional Limitations, says: 'Except when the constitution has imposed limits on the legislative power, it must be considered as practically absolute, whether it act according to natural justice or not, in any particular case. The courts are not the guardians of the rights of the people of the state except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil, but Courts cannot assume these rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced unless restrictions upon the

legislative authority can be pointed out in the constitution, and the case shown to come within them. The moment a court ventures to substitute its own judgment for that of the legislature in any case where the constitution has vested the legislature with power over the subject, that moment it enters upon a field where it is impossible to set limits to its authority, and where its discretion alone will measure the extent of its interference.' Cooley, Const.Lim. (6th Ed.), 200, 201. Our own decisions are thoroughly in accord with this view: *McGinnis v. State,* 9 Humph., [43] 47; *Washington v. Mayor, etc.,* 1 Swan, 177, 180; *Davis v. State,* 3 Lea, [376] 378; *Ballentine v. Mayor, etc.* [*of Town of Pulaski*], 15 Lea, [633] 634; *Lynn v. Polk,* 8 Lea, [121] 229; *Peck v. State,* [2 Pick., 262], 86 Tenn. 262, 6 S.W. 389; *Williams v. Nashville,* [5 Pick., 488], 89 Tenn., [487] 488, 15 S.W. 364; *Cole Manufacturing Co. v. Falls,* [6 Pick., 481], 90 Tenn. 466, 16 S.W. 1045; *Sutton v. State,* 12 Pick., 698, 96 Tenn. 696, 36 S.W. 697, 33 L.R.A 589.

It is the settled rule in Tennessee and in the United States generally, that the legislature has unlimited power to act in its own sphere of legislation, except so far as restrained by the constitution of the United States and the constitution of the state. *Bell v. Bank,* Peck., 269; *Hope v. Deaderick,* 8 Humph. [1] 8; *Davis v. State,* 3 Lea, [376] 377; *Stratton Claimants v. Morris Claimants,* [5 Pick., 497], 89 Tenn. 497, 15 S.W. 87 [12 L.R.A. 70]; 3 Am. & Eng. Enc. Law, 689.

If the act, therefore, does not violate some provision of the constitution, this court has no jurisdiction or power to lay hands upon it, and arrest its execution,

whether its provisions are wise or unwise, whether its operation be hurtful or beneficial. If, in the opinion of this court, however, it does in any material respect violate the fundamental law of the land, it is the duty of this court to so declare and prevent its enforcement.

This court does not exercise arbitrary powers in construing either statutes or constitutions. * * *''

If the appellees here are in anywise aggrieved, it is not by reason of the action of this Court, but rather by that of the Legislature.

It results that that the judgment below is reversed and the cause dismissed. Costs are taxed to the appellees.

BURNETT, CHIEF JUSTICE, and CHATTIN, JUSTICE, concur.

DYER and HUMPHREYS, JUSTICES, dissenting.

MR. JUSTICE HUMPHREYS (dissenting).

As I see it, the issue in this case is not whether the action taken to incorporate the City of Hendersonville, Tennessee, can by strict definition be brought under T.C.A. sec. 6-1801 et seq., but whether this chapter was ever intended by the legislature to be put to the use for which the incorporators seek to employ it. In other words, the question more properly stated is: whether by what little is said in sec. 6-1801 et seq., thirty-nine people can call an incorporation referendum, in which only fifty-three people vote for incorporation, and so create a minuscule municipality of 250 pepole, in the figurative heart of a community of 14,000 people. 14,000 people who reject the idea of municipal government but who will be helpless to preserve and continue under the form of government they have chosen, because the mini-city created in their midst will have the power by statute,

T.C.A. sec. 6-309, to gobble them up in quarter-mile square chunks of not more than five hundred persons, at will.

It would seem that it would only be necessary to state this general proposition to show the legislature never intended any such unjust result.

The facts alleged and admitted by the declaration are, that there exists in Sumner County, Tennessee, the un-incorporated community of Hendersonville. This community comprises approximately forty square miles and is inhabited by some fourteen thousand people. These people have a common community interest. Presently they are serviced with public utilities and other arrangements related thereto which they consider adequate. Such government as they think they require is provided by Sumner County and the State of Tennessee. In the midst of this community of fourteen thousand people, thirty-nine people petitioned the election commission to hold an incorporation election to incorporate $18/100$ of one square mile of the total community territory of forty square miles, with the proposed municipality to have a total population of 250 people. All of the people signing the petition with the exception of four live on two streets of the community, with the great majority of the thirty-nine petitioners residing on one single street of the community. When the election was held, only seventy-nine votes were cast, fifty-three for incorporation and twenty-six against.

In such a case as this it is obviously our duty to subject the statute under which this injustice is sought to be imposed to the most serious and detailed scrutiny and if at all possible sustain the Chancellor.

In considering this question certain statutes must be examined. Two of these are T.C.A. sec. 6-1803 and T.C.A. sec. 6-309. These statutes provide in relevant part as follows:

"6-1803. *Right to adopt city-manager form—Incorporation within specified distances from existing municipalities.*—The residents of any incorporated municipality or of any territory which it is desired to incorporate shall have the right to adopt the provisions of chapters 18 to 23, inclusive, of this title in the manner herein provided; and thereupon such city or territory be and become incorporated and be governed as herein set forth. No unincorporated territory shall be incorporated under the provisions of chapters 18 to 23, inclusive, of this title unless such territory contains not less than two hundred (200) persons, who shall be actual residents of the territory, and shall also contain real estate included in said territory worth not less than five thousand dollars ($5,000)."

T.C.A. sec. 6-309 provides:

"6-309. *Annexation by ordinance.*—A municipality when petitioned by a majority of the residents and property owners of the affected territory, or upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property thereof endangered, after notice and public hearing, by ordinance, may extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a

whole, provided said ordinance shall not become operative until thirty (30) days after final passage thereof.

"Provided, however, that before any territory more than one-fourth (¼) square mile in area or having a population of more than five hundred (500) persons may be annexed under this section, the governing body of the municipality shall adopt a plan of service setting forth at a minimum the identification and projected timing of municipal services proposed to be extended into the territory proposed to be annexed. Provided, further, that before any such plan of service shall be adopted, it must have been submitted to the local planning commission, if there be such, for study and a written report, to be rendered within ninety (90) days after such submission, unless by resolution of the governing body a longer period is allow."

Both of these Code sections must be taken into account in judging this case, because this is the only way this Court can fairly divine the legislative intent with respect to the creation and growth of municipalities. Certainly, the question of the right by statute of a municipality of two hundred people to annex at the rate of five hundred people and at the cost of the political rights of those it will annex is a pertinent inquiry in considering whether or not the legislature ever had in mind any such incorporation as is here sought.

Considering T.C.A. sec. 6-1803 literally we find no express authorization for this incorporation. If such exists it must be by reason of the inferred meaning of general terms. The authority to incorporate under sec. 6-1803 is provided for only by the first sentence of the statute. This sentence provides in part, *"The residents of any incorporated municipality or of any territory which it is*

*desired to incorporate* \* \* \*''. The controlling word so far as this case is concerned is the word "territory".

It is plain that in the absence of statutory definition, the term "territory" is ambiguous. The term cannot be given its dictionary definition for it is variously defined. However, some of this ambiguity is relieved if the term "territory" is read in connection with, and limited by the words "The residents of". It would seem this is indicated since people are of more importance than area or territory. When read in this way *it means not some, but all of the residents* of a territory are to be incorporated and this means all those residents who will be affected by incorporation. We repeat, the important question must always be what are the rights of the people.

There is nothing in the second sentence to prevent this construction. This sentence [1] does not spell out authority for incorporation. Rather, it simply defines the smallest territory that can be incorporated. And examine it as you will, you can find nothing in it that warrants defining territory in any other way than that suggested above.

The idea that "The residents \* \* \* of any territory" means all of the residents of a given territory is borne out by the provision in this same sentence, that "The residents of any incorporated municipality \* \* \* shall have the right \* \* \*'' to incorporate under the Code section.

---

[1] "No unincorporated territory shall be incorporated under the provisions of chapters 18 to 23, inclusive, of this title unless such territory contains not less than two hundred (200) persons, who shall be actual residents of the territory, and shall also contain real estate included in said territory worth not less than five thousand dollars ($5,000.00)."

Here, again, although the statute doesn't say so, everyone would agree that this provision contemplates *all of the residents* of the municipality being included in the reincorporation. So, if the term "residents" obviously means all of the residents where the reference is to an incorporated municipality, why does it not mean all of the residents of a territory, as well?·

The only conceivable reason for holding to the contrary would be that the second sentence of the statute requires a different result. But, as has already been pointed out this sentence confers no powers of incorporation at all. It is to the contrary simply a limitation on the powers of incorporation.

As to the argument that this construction provides no exact statutory beginning point for the size, only a statutory limitation or ending point, the reply must be that this is a short-coming in the act which this Court should not undertake to supply when so to do results in a serious invasion in the political rights of fourteen thousand people. If the act of incorporation is inadequate in this regard, and it obviously is unless the term "territory" is to be defined as above suggested, it is not incumbent on this Court to meet this inadequacy by an unjust construction. If we are going to fill up gaps in statutes we should do so only on the side of fairness and right. And where, as here, the statute does not expressly and exactly require us to validate this incorporation, because of the gap left in it by failure to define territory in relation to inhabitants, we are under no duty to fill up this gap just so there can be an unjust result. We should bear in mind that we do not have to define every case in which incorporation can be had, in dealing with this case. Here, we simply have to say whether or not this particular

incorporation is contemplated by this statute, and it clearly is not. I would affirm the Chancellor's decree.

MR. JUSTICE DYER (dissenting).

Assuming as we must the allegations of the original bill to be true, the cause being here upon demurrer, the gist of the original bill is as follows:

That there is a large, contiguous, thickly settled, unincorporated community in Sumner County known as Hendersonville. That this area of about 40 square miles contains 14,000 people, business houses, schools, churches, 110 miles of water lines, 20 miles of sewer lines, and the inhabitants thereof have a common community of interest. That out of this area the incorporators have designated less than one square mile, containing 251 people to be formed into a municipal corporation under Chapter 18 of Title 6, T.C.A. The issue made is whether the incorporators are required to include the greater part of this area having a community of interest or can they incorporate any part of the area so long as the part to be incorporated contains at least 200 people and real estate the value of $5,000.00.

I think the case of *State of Texas v. Perkins*, 360 S.W. 2d 55 (Tex.Civ.App., 1962), is in point. In the *Perkins* case the statute authorized a "town or village" to incorporate. In this case there was an area of 691 acres, the inhabitants thereof having a common community of interest with 301 residences, 5 churches, and 25 business houses. There was an attempt to incorporate the Town of Impact as an area of 47.43 acres cut out of the 691 acres. The court quoted from *Ewing v. State ex rel.*

*Pollard,* 81 Tex. 172, 16 S.W. 872 (1891), an opinion by the Supreme Court of Texas, as follows:

> * * * the Supreme Court asked the question, "Who are empowered to create the corporations?" It answered, "The inhabitants of cities, towns, and villages." It then asked, "What are they empowered to incorporate," It answered, "The cities, towns, and villages themselves, and not also such portions of the adjacent territory as these inhabitants may be pleased to embrace within the limits of the corporation." It said that "the area occupied by a town * * * is so marked by the aggregation of residences and appurtenant structures that it is always practicable to fix the boundaries so as not to include any territory not authorized to be embraced. With a just disposition to respect the rights of the owners of adjacent property, no body of petitioners need make such a mistake as to this matter as will imperil the validity of the act of incorporation."

The Court accepting the rationale of the *Ewing* case, which was, in effect, the incorporators could not include large areas of essentially rural land, applied same to the other side of the coin, that is, exclusion of a major portion of a contiguous inhabited area, and held the incorporators were required to include substantially the whole of the area as it existed at the time of the attempted incorporation unless there be natural boundaries separating the chosen area from the rejected areas. The court in the *Perkins* case said:

> If the incorporating petitioners do not respect the rights of the inhabitants of a major portion of the town or village they imperil the validity of their acts in attempting to incorporate. 360 S.W.2d at 558.

*State v. Perkins,* supra, by the Court of Civil Appeals, was reversed by the Supreme Court of Texas but on other grounds; that is, that the incorporation of Impact was saved by certain validating acts. See 367 S.W.2d 140 (Tex.1963).

In *State on Information of Eagleton v. Champ,* 393 S.W.2d 516 (Mo.1965), the statute authorized incorporation of a "village and its commons." In the *Champ* case the same issue was made as in *State v. Perkins,* supra, and the court adopted and followed the reasoning of the *Perkins* case.

The case of *Board of Supervisors of Norfolk County v. Duke,* 113 Va. 94, 73 S.E. 456 (1912), involved a challenge to incorporation of a part of a thickly settled community. While the Virginia statute does differ from the statute involved in the case at bar, nevertheless the logic used by the court is persuasive. In the *Duke* case the Supreme Court of Virginia said:

As the act requires the town incorporated shall contain not less than 200 inhabitants, it is conceivable that such a community might be almost indefinitely subdivided and erected into municipal corporations, if a faction in one of the subdivisions chanced to obtain control. We do not believe that the act contemplates anything of the kind; and when it provides for the incorporation of a thickly settled community, it does not mean that the community shall be subdivided in accordance with the caprice and whim of a limited portion of the people constituting the entire community. Great and unnecessary burdens might be imposed, and great wrong and injury accomplished, under such a construction. 73 S.E. at 459.

The incorporation here is under T.C.A. 6-1803, the pertinent parts as follows:

The residents * * * of any territory which it is desired to incorporate shall have the right to adopt the provisions of chapters 18 to 23, inclusive, of this title in the manner herein provided; and thereupon such city or territory shall be and become incorporated and be governed as herein set forth. No unincorporated territory shall be incorporated under the provisions of chapter 18 to 23, inclusive, of this title unless such territory contains not less than two hundred (200) persons, who shall be actual residents of the territory, and shall also contain real estate included in said territory worth not less than five thousand dollars ($5,000). * * *

The decision here turns on the construction to be placed on the word "territory" as used in this statute. I do not think the Legislature by amending (Chapter 7, Public Acts of 1955), the original statute (Chapter 173, Public Acts of 1921), requiring a "territory" in order to incorporate have a minimum population and taxable property manifested an intent to authorize any territory meeting these two minimum requirements to incorporate regardless of any other circumstances.

In designating an area where a municipal corporation may be formed the Tennessee statute, uses the word "territory;" the Texas statute the words "town or village;" and the Missouri statute the words "village and its commons." I think these different words as used are interchangeable. They all refer to an unincorporated area that may become incorporated.

The statute here for construction authorizes a territory to form a municipal corporation. A municipal corpora-

tion whether it be large or small is generally formed in a contiguous populated area where the residents have a community of interest for the purpose of obtaining local self-government and co-operative services, and I would presume the Legislature was aware of such when it authorized a territory to form a municipal corporation. I would construe the word "territory" as used in T.C.A. 6-1803 to mean such an area.

The size of the territory to be incorporated is in a large measure left to the people concerned and their judgment is not lightly to be ignored but I do not think the Legislature intended a small part of a large area could be incorporated at least when the large area itself is suitable for incorporation and the rights of the people of the large area are affected by the incorporation of the small area.

If this incorporation of less than one square mile be valid this inhabited territory of forty square miles having a common community of interest could wind up with thirty to forty municipal corporations. As noted in *Board of Supervisors of Norfolk County v. Duke,* supra, surely the Legislature did not intend any such result.

I realize this dissenting opinion is in conflict with *Raucher v. Frost,* 53 S.W. 318 (Ct. of Chancery Appeals, Tenn. 1889). I would overrule *Raucher v. Frost.*

I respectfully dissent from the majority opinion.

### On Petition to Rehear

Mr. Justice Creson.

In this cause we have been presented with a petition to rehear. In every essential, the thrust of this petition is precisely what was argued, orally and in writing, before preparation of the original opinion.

It should be obvious to counsel for appellees that if the Tennessee statute involved here was in words and theory the same as those construed in the authorities cited in the dissenting opinion, we would be much inclined to agree. The crucial difference is that, under appellee's theory and these statutes, the general language, such as "community" and "territory" is left open for judicial construction and application; while the Tennessee statute contains its own definition which serves to severely limit the judicial function. It must be recognized that a legislative enactment within the competence of the Legislature, and valid in substance and form, is not to be judicially tampered with under the guise of construction, not required by the statute. We will repeat that the wisdom of an Act of the Legislature, or its lack of that desirable quality, is not a judicial question.

The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and CHATTIN, JUSTICE, concur.

DYER and HUMPHREYS, JUSTICES, dissenting.